Argued and submitted May 18, 2010, affirmed April 27, 2011

BUTLER BLOCK, LLC,
a Delaware limited liability company,
*Plaintiff-Appellant,*

*v.*

TRI-COUNTY METROPOLITAN
TRANSPORTATION DISTRICT OF OREGON,
an Oregon municipal corporation,
*Defendant-Respondent.*

Multnomah County Circuit Court
080404925; A142060

255 P3d 665

396

Michael H. Simon argued the cause for appellant. With him on the briefs were Cody M. Weston and Perkins Coie LLP.

Joel A. Mullin argued the cause for respondent. With him on the brief was Stoel Rives LLP.

Before Haselton, Presiding Judge, and Armstrong, Judge, and Duncan, Judge.

HASELTON, P. J.

**HASELTON, P. J.**

Plaintiff Butler Block, LLC (Butler Block) appeals, assigning error to the trial court's allowance of summary judgment in favor of defendant Tri-County Metropolitan Transportation District of Oregon (TriMet). On appeal, Butler Block raises a single assignment of error, contending that the trial court erred in granting summary judgment to TriMet because there are issues of material fact as to whether TriMet *anticipatorily breached* the parties' development agreement by refusing to grant Butler Block an extension of time to perform when it was unable to obtain "construction financing" in late 2007 "due to the unexpected collapse" of the "global credit" and Portland "real estate markets." As amplified below, we conclude that, as a matter of law, TriMet's failure to grant an extension was not an anticipatory repudiation of the parties' agreement. Accordingly, we affirm.

The operative facts that are ultimately material to our analysis and disposition are uncontroverted. In November 2004, the parties entered into a lengthy and detailed "Disposition and Development Agreement" (the agreement). In general terms, TriMet agreed to convey a parcel of land in Portland—that is, "the site"—to Butler Block[1] in exchange for Butler Block's commitment to develop "a transit-oriented, mixed-use residential/retail/commercial development" with "parking" on the site.

Three aspects of the agreement are especially pertinent to the issues on appeal.

*First*, the agreement contains conditions precedent to Butler Block's obligation to purchase the site and TriMet's obligation to convey it. Specifically, section 2.03(3) provides that Butler Block's obligation to purchase the site is subject to "obtaining financing (which may be through debt and/or equity sources) for the construction of the Developer

---

[1] Plaintiff Butler Block is a limited liability company with three members— M. David Paul Development LLC; M. David Paul Ventures LLC; and SIP Management, LLC. However, as Butler Block asserts on appeal, "[t]he driving force and key principal behind Butler Block is real estate developer M. David Paul and his affiliated companies."

Improvements on a basis and on terms that are satisfactory to [Butler Block]." Relatedly, section 2.04(3) provides that TriMet's obligation to convey the site is subject to its receipt of financial information from Butler Block that is "reasonably satisfactory to demonstrate to TriMet that the financial capacity of the participants in the development entity is sufficient to carry out the financial obligations of [Butler Block] and to construct the Developer Improvements and the Project."[2] Further, section 2.04(4) provides that TriMet's obligation to convey the site is subject to Butler Block's "providing to TriMet evidence, reasonably satisfactory to TriMet, that construction financing for the Developer Improvements has been or can be obtained by [Butler Block], and closing of such construction financing and equity contribution concurrently with conveyance of the Site."

*Second*, the agreement provides that, under certain circumstances, each party has the right to terminate the agreement due to concerns related to financing. Section 5.07 provides, in part, that Butler Block may terminate the agreement "in the event that prior to the conveyance of title to the Site, the conditions precedent as set forth in Section 2.03 shall not have been satisfied or waived to the satisfaction of [Butler Block.]" In other words, if, before the site is conveyed, Butler Block cannot obtain debt or equity financing on terms that it finds satisfactory, it may terminate the agreement. Relatedly, under section 5.08(4), TriMet may terminate the agreement "[i]n the event that prior to the conveyance of title to the Site," Butler Block "does not submit evidence that it has the necessary equity capital and mortgage financing, in a satisfactory form to undertake and complete the obligations

---

[2] Section 1.03 of the agreement defines "the Project" as

"the construction and development of a transit-oriented, mixed use residential/retail/commercial development with parking substantially in accordance with the Scope of Development attached hereto * * * and incorporated herein by this reference, with such changes as [Butler Block] and TriMet may, from time to time, mutually agree upon, and all of the improvements required to be constructed by [Butler Block] on the Site pursuant to this Agreement (the 'Developer Improvements'). The Project is anticipated to contain not less than 140 separate residential units, ground floor retail/commercial space, and parking to service the residential units, the retail/commercial space and such other neighborhood parking as determined by [Butler Block] and required by the 'Parking Agreements' defined [in another section of the agreement]."

of [Butler Block] under this Agreement and such failure is not cured within the applicable period for cure under this Agreement[.]"

Third, the agreement contains a broadly worded provision concerning extensions of time for the parties' performance due to causes beyond the control of the party seeking the extension—viz., section 6.04. Specifically, that section, which is at the heart of the parties' dispute, provides:

"In addition to specific provisions of this Agreement, performance by either party hereunder will not be deemed to be in default where delays or defaults are due to war; insurrection; strikes; lockouts; labor disputes; riots; volcanoes; floods; earthquakes; fires; casualties; acts of God; acts of the public enemy; epidemic; quarantine restrictions; freight embargoes; lack of transportation; governmental restrictions or priorities; litigation, including but not limited to litigation challenging the validity of this transaction or any element thereof; severe weather; inability to secure necessary labor, materials or tools; delays of any contractor or subcontractor or supplier; acts of the other party; acts or failures to act of any public or governmental agency or entities (except that TriMet's own acts or failure to act will not excuse performance by TriMet); *or any other cause beyond the control or without default of the party claiming an extension of time to perform.* In the event of such delay, the party delayed will give written notice of the delay and the reason therefor to the other party within 30 days after the delayed party learns of the delaying event. An extension of time for any such cause will be for the period of duration of the cause. Times of performance under this Agreement may also be extended for any reason in writing signed by TriMet's Director and [Butler Block]."

(Emphasis added.)

After its execution, the parties amended the agreement three times. Only the third amendment, which was executed in January 2007, is pertinent to the issues on appeal. That amendment extended the closing date by nine months to February 10, 2008. TriMet granted that extension under

section 6.04 of the agreement because of the delay caused by a neighborhood association's appeal of the project's design.[3]

Then, on November 1, 2007, Butler Block sent a letter to TriMet, which precipitated the chain of events culminating in this litigation. In that letter, Butler Block reaffirmed its commitment to complete the project but requested an 18-month extension under section 6.04 because, it asserted, due to circumstances beyond its control, it was unable to obtain reasonable construction financing. Specifically, the letter stated, in part:

"As you are aware, within the last thirty (30) days, several circumstances beyond our control have arisen which [make it] both impossible and imprudent to proceed with the development at this time. Principal among these is the condition of the financial market generally, which makes it impossible to obtain reasonable financing on this type of development. Second, and detrimental to the current success of the project, is the combination of the escalating cost of construction and the surplus of high rise condominium units in the Portland marketplace.

"* * * * *

"Make no mistake, we are firmly committed to this project. We have invested nearly $2,500,000 in design, development planning, market surveys and the like. We intend to complete what we have started. We simply need more time, given the conditions we are facing, all of which are circumstances beyond our control. * * *

"We are aware that other developers are interested in this project. We will take any and all steps necessary to be sure that they do not interfere in the contractual relationship we have with TriMet. We expect TriMet to honor its contract with us and we plan to do the same. Our request for an extension is consistent with Section 6.04 of the Agreement,

---

[3] Specifically, the third amendment recites, in part:

"[Butler Block] believes that the nine (9) month extension is warranted because the delay caused by the [neighborhood association's] appeal of the Design Review Commission's approval to the City Council, coupled with opposition from property owners, is a delaying event that is excused by the provisions of Section 6.04 (Unavoidable Delay; Extension of Time of Performance) of the Agreement. TriMet has determined that [Butler Block] is entitled to an extension of time equivalent to the time requested by [Butler Block] under the language existing in the [agreement]."

and we believe that TriMet has both the authority and obligation to grant our request."

In its November 14 response, TriMet indicated that, contrary to Butler Block's understanding, it "d[id] not understand Section 6.04 to encompass changed market conditions or terms of financing" and did not understand that the circumstances to which Butler Block referred "arose within the last 30 days." However, TriMet stated:

"Notwithstanding differences in interpretation, TriMet has also invested substantial effort in support of [Butler Block's] project, and is willing to meet to discuss [Butler Block's] request for an extension. TriMet representatives are available to meet in Portland on [several specified dates].

"Aside from timing, TriMet's conditions precedent to delivery of deed and possession require, among other things, (1) evaluation of the financial capacity of the participants in the development entity to determine that it is sufficient to carry out the financial obligations of [Butler Block] and to construct the Developer Improvements and the Project, and (2) reasonably satisfactory evidence that construction financing has been or can be obtained by [Butler Block] to permit closing of construction financing and equity contribution concurrently with conveyance of the site."

In particular, TriMet requested that Butler Block submit various financial documents before the meeting, including "[t]he most currently 'audited' or 'reviewed' financial statements (balance sheet and operating statement) of Butler Block LLC and its members" and "[t]he most current internally prepared financial statements for the same entities, if later than audited or reviewed statements."

On December 7, the parties met to discuss a possible extension. In a letter dated December 11, TriMet reiterated its position: "[A]lthough TriMet is prepared to consider a request for an extension on receipt of the requested [financial] information, it rejects your client's assertion that any extension is required by Section 6.04 or any other section of the [agreement], as amended."

On January 9, 2008, TriMet sent Butler Block notice that (1) pursuant to section 2.04(4) of the agreement, before

TriMet was obligated to convey the site, Butler Block was obligated to provide "evidence, reasonably satisfactory to TriMet, that construction financing for the Developer Improvements has been or can be obtained" by Butler Block; and (2) pursuant to section 5.08(4), "TriMet may, at its option, terminate [Butler Block's] rights in this Agreement" if Butler Block does not submit the required documentation. According to TriMet, it had not received such information. Consequently, TriMet stated in conclusion:

> "Be advised that TriMet intends to terminate [Butler Block's] rights in the [agreement] should [Butler Block] not provide the evidence that it has the requisite financing within thirty (30) days after receipt of this notice."

(Underscoring in original.)

Despite TriMet's January 9 notice, negotiations continued concerning a meaningful extension pursuant to section 6.04.[4] In the course of those negotiations, the parties extended the February 10 closing date twice, ultimately setting February 29 as the new closing date. Additionally, TriMet agreed that it "[would] not declare a default under the [agreement]" before that date.

As the February 29 closing date approached, the parties' negotiations focused on a possible two- or three-year extension, which would have been conditioned on (1) a required commitment of money by Butler Block each time the close of escrow was extended and (2) amendments to various sections of the agreement, including an amendment to section 6.04 that would prohibit changes in real estate markets and the unavailability of financing from constituting grounds for a future extension. Ultimately, the parties were unable to reach an agreement.

In all events, at approximately 4:51 p.m. on Friday, February 29—the date set for closing—Butler Block notified

---

[4] On January 31, as negotiations continued, Butler Block sent a lengthy letter to TriMet's General Manager, expressing, *inter alia*, its concerns about the parties' purportedly deteriorating relationship. The content of the letter essentially pertained to TriMet's "refusal to negotiate in good faith." Given Butler Block's failure to challenge the dismissal of its good faith and fair dealing claim and our analysis pertaining to the claims that are at issue on appeal, the content of that letter is immaterial to our disposition.

TriMet that it had obtained the necessary "financing from M. David Paul Development LLC and its affiliate companies ('MDPD')." Specifically, Butler Block's letter stated, in part:

"* * * Please consider this letter as submission pursuant to [section] 2.04(3) of the [agreement] of financial information sufficient to demonstrate that Butler Block's financial capacity is sufficient to carry out its financial obligations and construct the Project and, pursuant to [section] 2.04(4), evidence that construction financing in the form of an equity investment for the Project has been obtained and can and will be closed concurrently with conveyance of the Site.

"The [agreement] between TriMet and Butler Block contemplates that construction funds for the development of the Project may consist of loans, equity investments, or a combination of the two. As indicated in the attached letter, MDPD will commit $25 million to the Project at closing, has the ability to obtain additional cash to infuse into the Project should that become necessary, and has a net worth well in excess of the cost to develop the Project (presently estimated to be $80 million).[5] The future contributions from MDPD may take the form of equity and/or loans. MDPD will fund the Project to whatever extent necessary, although Butler Block reserves the right to obtain additional or replacement financing from other sources at any time. Given the state of the financial markets currently confronting Butler Block, we feel that the most expeditious route to Project completion is financing from MDPD until the financial markets loosen.

"* * * * *

"Butler Block has requested and hoped to obtain an extension of certain deadlines under the [agreement]. While no agreement could be reached and we believe that a denial of the extension is not appropriate under the terms of the [agreement], Butler Block has moved forward and obtained financing. In addition to the $2.5 million it has invested in the Project to date, this financing further demonstrates Butler Block's ongoing commitment to completing the Project.

---

[5] The attached letter stated that Butler Block (and, by practical extension, TriMet) "may consider this letter MDPD's unconditional commitment to finance the * * * Project and to assist Butler Block * * * in obtaining conventional and non-conventional financing should the same become available."

"Butler Block is ready to close escrow. We will very shortly complete the applications for the initial permits for the Project and will commence the initial construction activities shortly after the permits are issued. We look forward to working with TriMet to bring construction to a successful conclusion."

In addition, Butler Block's letter indicated that various project-related documents were available for review at its attorney's office. However, those documents did not include the financial statements that TriMet had previously requested. *See* 242 Or App at 401 (describing requested financial documentation).

Thereafter, on the morning of March 3, David Auxier, TriMet's Chief Financial Officer, reviewed the February 29 letters. He concluded that "the documents provided were not adequate to determine that construction financing had been or could be obtained because the letters" failed to include (1) "independent supporting evidence, including current audited financial statements, that M. David Paul Development LLC and its affiliate companies actually had the financial capacity to provide $25 million and any additional infusion of equity or loans necessary to complete the Butler Block project"; and (2) "information to understand under what terms the $25 million plus additional equity and/or loans from MD Development LLC was being made available to Butler Block LLC." Furthermore, those failures, "coupled with the fact that the February 29 letters contemplated additional or replacement financing," indicated to Auxier that (1) "[t]he $25 million was likely not an equity infusion into Butler Block" and (2) "[t]he terms of the loan from M. David Paul Development LLC may not be in the long-term interest of Butler Block * * *." Accordingly, Auxier determined that "the documents provided were unsatisfactory."

Later that same day, TriMet filed an action for declaratory relief against Butler Block in the United States District Court for the District of Oregon. In that action, TriMet sought, *inter alia,* declarations that it no longer had

obligations under the agreement and was entitled to termi-nate it.[6]

In April 2008, Butler Block filed this action in state court, alleging claims for breach of contract and breach of the implied obligation of good faith and fair dealing and seeking several related declarations. We describe the complaint in some detail because, although the issues on appeal relate to the claim for breach of contract, our analysis of those issues and our disposition are ultimately informed by an overall understanding of all of the alleged claims.

We begin with Butler Block's first claim for relief—that is, its claim for breach of contract. As pleaded, the gravamen of the claim is that

> "TriMet's [March 3] filing of the Federal Action seeking declaratory judgment that it is entitled to terminate the [agreement], coupled with its January 9, 2008, notice that it intended to terminate the [agreement] if Butler Block did not provide requested financial documentation, manifests TriMet's intent not to perform fully before its performance is due under the [agreement]. Accordingly, TriMet has anti-cipatorily repudiated the [agreement]."

Several allegations followed, each of which alleged an independent and alternative reason for why TriMet was not entitled to terminate the agreement as provided in the January 9 notice—that is, to terminate the agreement unless Butler Block provided the requested financial documenta-tion.[7] As pertinent, Butler Block alleged, *inter alia*, that (1) it had already provided required documentation and (2) had TriMet granted the extension, Butler Block would not have been obligated to provide the financial documentation at the time of the notice.

---

[6] Our understanding is that TriMet's federal action ultimately was dismissed on the ground that the court lacked subject matter jurisdiction. That dismissal occurred approximately a month after Butler Block initiated this action in state court, as described below.

[7] *See* Arthur L. Corbin, 4 *Corbin on Contracts* § 973, 910 (1951) ("If one party to a contract, either wilfully or by mistake, demands of the other a performance to which he has no right under the contract and states definitely that, unless his demand is complied with, he will not render his promised performance, an antici-patory breach has been committed.").

Butler Block also raised closely related claims for declaratory relief. In its third claim for relief, Butler Block sought a declaration that it had "provided sufficient financial documentation required by [sections] 2.04(4) and 5.08(4) of the [agreement]." And, in its sixth claim for relief, Butler Block sought a declaration that "TriMet was obligated by [section] 6.04 of the [agreement] to extend the closing date until such time as the financial and real estate market conditions are favorable for construction of the project."[8]

As noted, in its second claim for relief, Butler Block also alleged that TriMet had breached the implied obligation of good faith and fair dealing in five respects. Specifically, Butler Block alleged that (1) "TriMet did not disclose to Butler Block its historical relationship with and commitments to the [neighborhood association that had objected to the design review] regarding the * * * project"; (2) "TriMet is unwilling to fulfill its obligations to Butler Block" under the agreement "because of pressures on TriMet from the [neighborhood association] and adjoining Site property owners for the * * * project to not go forward"; (3) "TriMet refused to appropriately consider the financial documentation Butler Block provided under the [agreement], up to and including Butler Block's February 29, 2008, submission of additional financial documentation, which included evidence that it had obtained financing for the project"; (4) "TriMet did not provide Butler Block a sufficient time period to cure any alleged violations of the [agreement]"; and (5) "TriMet refused to grant Butler Block a time extension for performance under the [agreement], as [section] 6.04 of the agreement required given changed conditions in the financial and real estate markets."

TriMet moved for summary judgment. As pertinent to the issues on appeal, the parties' competing contentions centered on two overarching issues—*viz.*, (a) whether Butler Block was entitled to an extension under section 6.04 because of changes in the real estate market and its inability to obtain

---

[8] Butler Block's fourth and fifth claims sought additional declaratory relief. Because those claims are not pertinent to the issues raised on appeal, we do not discuss them further.

construction financing; and (b) whether TriMet's conduct constituted an anticipatory repudiation of the agreement.

As noted, Butler Block's complaint identified the actionable conduct, for purposes of its breach of contract claim, as TriMet's federal filing on March 3 coupled with its January 9 notice of intent to terminate if Butler Block did not provide the requested financial information. *See* 242 Or App at 405. Nonetheless, in resisting summary judgment, Butler Block broadened its position by pointing to additional conduct by TriMet that purportedly constituted an anticipatory repudiation. Specifically, and of critical importance on appeal, Butler Block contended that, in determining whether an issue of fact existed as to whether TriMet anticipatorily repudiated the agreement, the court should examine the circumstances that existed between the parties over the five-month period between October 2007 and March 2008. Consistently with that contention, Butler Block asserted, *inter alia*, that TriMet's initial refusal—presumably in November 2007—to grant an extension under section 6.04 "by itself, amounts to [an] anticipatory repudiation."

The court granted TriMet's summary judgment motion. Initially, the court issued a letter opinion in which it reasoned that "[TriMet] did not breach the agreement" because "there is nothing in the record that supports the theory of anticipatory repudiation" and, further, because "[TriMet] acted prudently in requesting the financial documents [that Butler Block] had refused to provide * * *." Significantly, in a later e-mail exchange with the parties,[9] the court clarified that, in making its ruling, it had "avoided the issue of whether the tough economy is something beyond the control of the parties in light of sections 6.04 and 2.03(3)[.]" However, after Butler Block noted that the court could not avoid that issue, the court stated:

> "I will adhere to my original opinion letter and grant [TriMet's] motions. I do not find anticipatory repudiation as a matter of law, and as an aside, I believe the agreement did

---

[9] Following the summary judgment hearing, the court engaged in several e-mail exchanges with the parties that the court attached to and incorporated into its order granting TriMet's motion for summary judgment.

not provide for an indefinite extension due to the economic conditions."

Ultimately, the trial court entered a general judgment, dismissing the claims for breach of contract and breach of the implied obligation of good faith and fair dealing. Further, as pertinent here, the court declared that (1) "[Butler Block] did not provide to TriMet the financial documentation required by [sections] 2.04(4) and 5.08(4) of the parties' [agreement]" and (2) "TriMet was not obligated under [section] 6.04 of the [agreement] to extend the date for close of escrow." Butler Block appeals.[10]

■ On appeal, Butler Block raises a single assignment of error:

"The trial court erred by granting summary judgment in TriMet's favor because the record contains genuine issues of material fact as to whether TriMet anticipatorily breached the [agreement] by refusing to grant Butler Block an extension under * * * [section] 6.04."

(Emphasis omitted.) As so framed, the sole object of that assignment is the trial court's disposition of the breach of contract claim, the only claim that was predicated on allegations of anticipatory repudiation.[11] Further, as so framed, the

[10] Butler Block also appeals a later supplemental judgment in which the court awarded TriMet its attorney fees and costs, contending only that a reversal of the general judgment necessitates a reversal of the supplemental judgment. Our affirmance of the general judgment, however, necessitates affirmance of the supplemental judgment as well. *See* 242 Or App at 413.

[11] Arguably, Butler Block's assignment of error could encompass its claim for breach of the implied covenant of good faith and fair dealing because that claim purports to encompass all preceding allegations, including those that comprise the breach of contract claim. However, in its brief, Butler Block acknowledges the limited scope of its assignment of error in its description of the nature of the judgment on appeal, stating that "Butler Block seeks review and reversal of the * * * general judgment with respect to Butler Block's *first and sixth claims* for relief for breach of contract and declaratory judgment, respectively[.]" (Emphasis added.)

Further, notwithstanding Butler Block's efforts to shoehorn its sixth claim for relief—that is, the claim that sought declaratory relief as to TriMet's purported obligation to grant an extension under section 6.04—within its assignment of error, that claim does not fall within the purview of that assignment. That is so because the assignment of error explicitly pertains only to TriMet's purported anticipatory repudiation, which, in turn, pertains solely to Butler Block's breach of contract claim. The sixth claim for relief is not similarly implicated because Butler Block's purported entitlement to an extension pursuant to section 6.04 exists (or, as the trial court concluded, does not exist) regardless of any alleged anticipatory

assignment of error does not purport to revive Butler Block's original allegations, as pleaded in the complaint, *see* 242 Or App at 405, that TriMet had anticipatorily repudiated the agreement either by way of its January 9 notice to terminate unless Butler Block provided the requested financial information or by commencing the litigation in federal court on March 3. Rather, reduced to its essentials, Butler Block's fundamental contention is that TriMet is not entitled to summary judgment against the breach of contract claim because TriMet anticipatorily repudiated the agreement, *by failing to grant Butler Block an extension under section 6.04.*

In support of its assignment of error, Butler Block raises two interrelated contentions. First, Butler Block contends that section 6.04 of the parties' agreement "unambiguously provides for an extension of time to perform for *any* delays outside the control of the parties," including the changes in the real estate market and its inability to obtain construction financing. (Emphasis in original.) Second, Butler Block contends that the trial court erred in granting TriMet summary judgment on the breach of contract claim either because TriMet anticipatorily breached the agreement, as a matter of law, "by positively and unequivocally stating on several occasions that it would not recognize the extension," or, alternatively, because there is, at least, a genuine issue of material fact as to whether TriMet anticipatorily breached the agreement so as to preclude summary judgment.

Conversely, TriMet remonstrates that section 6.04 of the agreement "does not compel extensions of performance to accommodate financing-related delays" and that, if Butler Block was unable to obtain satisfactory financing, it had the option under other sections to terminate the agreement. (Boldface and capitalization omitted.) Further, TriMet contends that it did not repudiate the agreement, as a matter of law, because, *inter alia*, although TriMet told Butler Block in November 2007 that it did not interpret section 6.04 to require an extension under the circumstances, it agreed to

---

repudiation by TriMet; bluntly, the latter is immaterial to the adjudication of the former. Thus, as framed by Butler Block's assignment of error, the trial court's ruling as to the sixth claim is not presented for our review.

and, in fact, met to discuss Butler Block's requested extension. Invoking *Mohr v. Lear*, 239 Or 41, 49, 395 P2d 117 (1964), TriMet asserts that such conduct was not a "positive, definite, absolute, unconditional and unequivocal" refusal to perform its contractual obligations—that is, its conduct was not, as a matter of law, an anticipatory repudiation of its contractual obligations.

We need not resolve Butler Block's first contention concerning whether TriMet was obligated under section 6.04 to grant an extension. That is so because, even assuming without deciding that Butler Block was entitled to an extension,[12] TriMet's failure to grant one was not, as a matter of law, an anticipatory repudiation.

■ ■ A party repudiates a contract when its conduct evinces a fixed purpose not to perform the contract. As the court stated in *Swick v. Mueller et ux.*, 193 Or 668, 676, 238 P2d 717 (1951), "[t]he general rule is that before a party to an executory contract may be said to have anticipatorily breached the same he must refuse by acts or deeds [to] perform his obligations under the contract positively, unconditionally, unequivocally, distinctly and absolutely."[13]

■ In resolving contract-related issues, Oregon courts adhere to an objective theory under which objective manifestations of intent control rather than the parties' uncommunicated subjective understanding. *See Sollars v. City of Milwaukie*, 222 Or App 384, 388, 193 P3d 75 (2008), *rev den*, 346 Or 184 (2009). Accordingly, the dispositive issue in this case is whether TriMet objectively manifested—through its conduct—that it unequivocally and absolutely would not proceed in accordance with its obligations under the agreement.

---

[12] We observe, without further comment, that even that abstract assumption may well be foreclosed by the trial court's disposition of Butler Block's sixth claim for relief (*viz.*, that "TriMet was not obligated under [section] 6.04 of the [agreement] to extend the date for close of escrow"). As noted, 242 Or App at 408-09 n 11, Butler Block has not assigned error to that ruling.

[13] *See Mohr*, 239 Or at 49 (reasoning that a repudiation is conduct that is "motivated by a positive, definite, absolute, unconditional and unequivocal intent evincing a fixed purpose not to perform in any event"). *See also* Corbin, 4 *Corbin on Contracts* § 973 at 905 ("In order to constitute an anticipatory breach of contract, there must be a definite and unequivocal manifestation of intention on the part of the repudiator that he will not render the promised performance when the time fixed for it in the contract arrives.").

■ On appeal, the initial focus of Butler Block's contention that TriMet unequivocally and absolutely refused to grant an extension under section 6.04 is on a series of statements by TriMet after Butler Block requested an extension on November 1, 2007. Specifically, in its opening brief on appeal, Butler Block posits that the following events evinced or constituted an anticipatory repudiation.

> "On November 14, 2007, TriMet expressly rejected Butler Block's request for an extension, stating:
>
>> " 'TriMet does not share your client's view of Section 6.04 of the Agreement. TriMet does not understand Section 6.04 to encompass changed market conditions or terms of financing, nor does TriMet understand that the circumstances cited in [Butler Block's extension request] arose within the last 30 days.'
>
> "Further, on December 11, 2007, TriMet unequivocally stated that it 'rejects your client's assertion that any extension is required by Section 6.04 * * *.' On January 9, 2008, TriMet sent its notice of default, demanding that Butler Block provide evidence of construction lender financing within 30 days, even though TriMet knew that Butler Block, despite its best efforts, had been unable to obtain such financing. Moreover, TriMet had demanded, without success, that Butler Block waive all future rights to an extension under Section 6.04 as a condition to TriMet granting any further extension of time."

(Record citations omitted; brackets and omission in original.) In its reply brief, Butler Block reiterates its reliance on TriMet's statement in its November 14, 2007, response to Butler Block's request for an extension that "TriMet does not understand Section 6.04 to encompass changed market conditions or terms of financing[.]"

Butler Block's reliance on that statement is unavailing because no reasonable person could understand that statement in context to express an "absolute, unconditional and unequivocal," *Mohr*, 239 Or at 49, intent not to perform by refusing to grant TriMet an extension. Although TriMet did, in fact, make that statement, TriMet said much more. *See* 242 Or App at 401 (quoting the November 14 letter). Significantly, TriMet indicated that it "[was] willing to meet to discuss [Butler Block's] request for an extension." In fact,

thereafter, the parties met in an attempt to negotiate a meaningful extension under section 6.04.

■       Similarly, TriMet's December 11 statement, in context, was simply a reiteration of its understanding that section 6.04 did not require an extension. Specifically, as we previously described, 242 Or App at 401, TriMet stated, "[A]lthough *TriMet is prepared to consider a request for an extension* on receipt of the requested [financial] information, it rejects your client's assertion that any extension is required by Section 6.04 or any other section of the [agreement], as amended." (Emphasis added.) Nevertheless, even though, as the trial court declared, Butler Block did not provide TriMet with the financial documentation required under the agreement,[14] TriMet continued negotiating with Butler Block over the terms of a meaningful extension under section 6.04. Accordingly, as with TriMet's November 14 statement, no reasonable person could understand the December statement, in context, to express an "absolute, unconditional and unequivocal," *Mohr*, 239 Or at 49, intent not to perform by refusing to grant Butler Block an extension.

■       To the extent that Butler Block relies on the January 9 notice as somehow evincing an intent by TriMet not to grant an extension in all events, that notice is immaterial to any such purported intent. As previously described, 242 Or App at 401-02, that notice did not refer to section 6.04. Instead, it pertained solely to Butler Block's obligation to provide the requested documentation under section 2.04(4) and TriMet's concomitant right to terminate the agreement under section 5.08(4) if Butler Block failed to do so. Further, the trial court declared, with respect to TriMet's requests for financial information, that "[Butler Block] did not provide to TriMet the financial documentation *required by* [sections] 2.04(4) and 5.08(4) of the parties' [agreement]." (Emphasis added.) We understand that declaration—which Butler Block does not challenge on appeal—to encompass a determination that TriMet's request for information in the January 9 notice completely comported with the requisites of sections 2.04(4) and

---

[14] As previously noted, that declaration was the subject of Butler Block's third claim for relief, 242 Or App at 406, the disposition of which was not assigned as error on appeal.

5.08(4)—that is, that TriMet was contractually entitled to demand such information and to indicate that it would invoke the contractually prescribed remedies for noncompliance. That conduct, in conformity with TriMet's rights under the contract, is not probative of any anticipatory repudiation.

Finally, Butler Block's cursory reference to TriMet's demand "that Butler Block waive all future rights to an extension under Section 6.04 as a condition to TriMet granting any further extension of time" is undeveloped. *See Beall Transport Equipment Co. v. Southern Pacific*, 186 Or App 696, 700-01 n 2, 64 P3d 1193, *adh'd to as clarified on recons*, 187 Or App 472, 68 P3d 259 (2003) (noting generally that "it is not this court's function to speculate as to what a party's argument might be" or "to make or develop a party's argument when that party has not endeavored to do so itself"). Accordingly, we decline to address it further.

For those reasons, as a matter of law, in the circumstances presented here, TriMet did not anticipatorily repudiate the agreement. Thus, the trial court properly granted TriMet summary judgment on Butler Block's breach of contract claim. Accordingly, we affirm.

Affirmed.