Argued and submitted March 10, 2010, appeal as to plaintiff Jennifer Taylor dismissed; otherwise affirmed May 25, 2011

Ruth HARNISCH,
Holli Arnold, Wanda Robertson, Cherie Caseres,
Moni Chandy, Pearl Lee, Linda Halvorson,
Jerilyn McClure, Amanda Fisher, Julie Lauringer,
Jeanie Kitterman, Karen Barnes, and Jennifer Taylor,
individually,
*Plaintiffs-Respondents,*

*and*

Debra MENDIVE,
*Plaintiff,*

*v.*

COLLEGE OF LEGAL ARTS, INC.,
an Oregon corporation,
*Defendant,*

*and*

CASCADE EDUCATION, LLC,
an Oregon limited liability company,
*Defendant-Appellant.*

Multnomah County Circuit Court
080710135; A140802

259 P3d 67

Brad C. Stanford argued the cause for appellant. With him on the briefs were Farleigh Wada Witt, and Keith Zakarin and Duane Morris LLP, *pro hac vice*.

Kevin Brague argued the cause for respondents. With him on the brief was The Brague Law Firm, LLC.

Before Brewer, Chief Judge, and Haselton, Armstrong, Wollheim, Schuman, Ortega, Sercombe, Duncan, and Nakamoto, Judges, and Rosenblum, Senior Judge.

WOLLHEIM, J.

Armstrong, J., concurring in part and dissenting in part.

## WOLLHEIM, J.

Plaintiffs, who were students at the College of Legal Arts, brought this action against defendants, College of Legal Arts, Inc., and its successor, Cascade Education, LLC, for breach of contract, breach of warranties, and misrepresentation.[1] Defendant moved to compel arbitration as to five plaintiffs who had signed enrollment agreements containing an arbitration clause and moved to stay the actions brought by all of the plaintiffs pending arbitration. The trial court granted the motion to compel arbitration as to four of the five plaintiffs whose enrollment agreements contained arbitration clauses, but found that one plaintiff, Lee, had not assented to the arbitration clause. The trial court granted the motion to stay the actions brought by those plaintiffs who were compelled to arbitrate, but denied the stay as to those plaintiffs who were not compelled to arbitrate. Defendant appeals, assigning error to, first, the trial court's denial of its motion to compel Lee to arbitrate and, second, the trial court's denial of its motion to stay the actions brought by the plaintiffs who did not agree to arbitrate. We affirm.

The relevant facts are not in dispute. Plaintiffs enrolled in the College of Legal Arts during different years, and the enrollment agreements varied from year to year. For the purposes of this case, the most significant difference between the various enrollment agreements is the presence of an arbitration clause on the back of the agreements signed by five of the plaintiffs.[2] On those forms, the front of the agreement contained spaces for student information, such as

---

[1] Defendant College of Legal Arts, Inc., owned College of Legal Arts and sold it to defendant Cascade Education, LLC. College of Legal Arts, Inc., did not file a brief in this appeal. In referring to "defendant," we refer to Cascade Education, LLC.

[2] Complaints by two additional plaintiffs, Barnes and Mendive, were joined to this action after the trial court disposed of defendants' motions to compel arbitration and to stay the remaining plaintiffs' claims. The parties agree that Barnes and Mendive must arbitrate their claims.

Additionally, defendant did not name plaintiff Jennifer Taylor in its notice of appeal. It tried to correct that error by filing an untimely amended notice of appeal in which it named Taylor as a plaintiff-respondent. That untimely notice of appeal is ineffective, and we accordingly dismiss the appeal as to Taylor. *See Jeffries v. Mills,* 165 Or App 103, 113, 995 P2d 1180 (2000) (dismissing appeal as to one party who was not named as an adverse party in the timely notice of appeal but who was named in an untimely amended notice of appeal).

name and address, a description of the program, tuition and financial aid for that program, and a list of costs that a student may incur, followed by lines to be filled in with the amount that the student would owe.[3] Also on the front of the enrollment agreement was this notice:

> "**NOTICE TO STUDENT**

> "By signing this enrollment agreement you acknowledge that you have read it completely and understand its content and that you have received a completed copy of this contract and its attachments, including the school catalog, with insertions. The terms and conditions of the back of this form and the policies in the catalog are part of this enrollment agreement. Do not sign this enrollment agreement if blank spaces have not been filled in."

(Uppercase and boldface in original.) The front of the enrollment agreement also contained lines for "Signature of Applicant" and "Signature of College Official."

On the back of the enrollment agreement were eight additional sections identified with uppercase headings. The heading for the final section, the arbitration clause, was also underlined. The text of the arbitration clause stated:

> "ARBITRATION AGREEMENT:   Any dispute arising from enrollment at College of Legal Arts, no matter how described, pleaded or styled, shall be resolved by binding arbitration and by a single arbitrator under the Federal Arbitration Act conducted by the American Arbitration Association ('AAA') at Portland, OR, under its Commercial Rules. All determinations as to the scope [and] enforceability of this Arbitration Agreement shall be determined by the Arbitrator, and not by a court. The award rendered by the arbitrator may be entered in any court having jurisdiction.

> "Student's initial _____ "

(Uppercase and underscoring in original.)

Four of the plaintiffs signed the signature line on the front of the enrollment agreement and initialed the line for

---

[3] Each enrollment agreement contained seven lines for possible fees, but the categories for fees differed from student to student. Every enrollment agreement in the record was blank on at least one of those lines.

"Student's initial" below the arbitration clause on the back of the enrollment agreement. Lee signed the front of the enrollment agreement in the space provided but did not initial below the arbitration clause on the back of the enrollment agreement.

After plaintiffs initiated this action, defendant moved to compel arbitration as to those plaintiffs who had signed enrollment agreements containing arbitration clauses. As to the remaining plaintiffs, defendant moved to stay their actions until the arbitration was completed. Plaintiffs argued that the arbitration clauses were unenforceable or, in the alternative, if the arbitration clauses were enforceable, a stay of those actions subject to arbitration should not require a stay of actions not subject to arbitration.

The trial court concluded that the arbitration agreements were enforceable as to each of the plaintiffs except Lee. It explained:

"The absence of * * * [Lee's] initials tells me that * * * she did not agree to this arbitration provision. Notwithstanding her signature on the front of the form, there's a specific place for her to initial her agreement to that additional provision on the back. She did not. And given all of the other circumstances, I think that means there's no enforceable agreement as to her."

The trial court also denied defendant's motion to stay the actions by plaintiffs who were not compelled to arbitrate.

On appeal, defendant makes two assignments of error: first, that the trial court erred in denying its motion to compel arbitration as to Lee; and, second, that the trial court should have stayed the actions of the nonarbitrating plaintiffs. We begin with defendant's first assignment of error.

Defendant asserts that Lee entered into a valid arbitration agreement by signing the enrollment agreement even though she did not initial the space below the arbitration agreement. Defendant claims that the "Notice to Student" paragraph alerted Lee to the terms on the back of the enrollment agreement, she is presumed to have read and understood the enrollment agreement, and initials are not a necessary formality to entering an arbitration agreement. Lee

contends that the absence of her initials objectively indicates that she did not assent to the arbitration clause. Alternatively, Lee argues that the arbitration clause is unenforceable because it is unconscionable. We conclude that the trial court did not err in finding that Lee did not assent to the arbitration clause, so we do not consider Lee's unconscionability argument.[4]

Defendant asserts that the arbitration clause is subject to the Federal Arbitration Act (FAA), 9 USC sections 1-16. We agree. The FAA applies to arbitration agreements that affect or involve interstate commerce. *Allied-Bruce Terminix Cos. v. Dobson*, 513 US 265, 277, 115 S Ct 834, 130 L Ed 2d 753 (1995). Many of the students, including some plaintiffs in this case, funded their education with federal loans. *See Citizens Bank v. Alafabco, Inc.*, 539 US 52, 58, 123 S Ct 2037, 156 L Ed 2d 46 (2003) ("No elaborate explanation is needed to make evident the broad impact of commercial lending on the national economy or Congress' power to regulate that activity pursuant to the Commerce Clause."). Moreover, at least one of the plaintiffs was a Washington resident when she signed the agreement.

Having concluded that the FAA applies, we turn to defendant's first assignment of error, which is that the trial court erred in denying defendant's motion to compel Lee to arbitrate. The FAA establishes a strong federal policy favoring arbitration. *Mitsubishi Motors v. Soler Chrysler-Plymouth*, 473 US 614, 631, 105 S Ct 3346, 87 L Ed 2d 444 (1985). But the strong federal policy favoring arbitration is not so strong that it overrides the contracting parties' intent and requires arbitration where the parties have not agreed to arbitrate. *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 US 52, 57, 115 S Ct 1212, 131 L Ed 2d 76 (1995) ("[T]he FAA's proarbitration policy does not operate without regard to the wishes of the contracting parties."). In determining whether the parties entered a legally enforceable agreement to arbitrate, we apply Oregon contract law. *See First Options of Chicago, Inc. v. Kaplan*, 514 US 938, 944, 115 S Ct 1920, 131 L Ed 2d 985 (1995) (courts apply state contract law to

---

[4] Those plaintiffs who were compelled to arbitrate do not cross-appeal from the trial court's order compelling arbitration. Accordingly, the unconscionability of the arbitration agreement as to the remaining plaintiffs is not at issue here.

determine whether parties agreed to arbitrate under the FAA). Specifically, defendant argues that "[t]here is no evidence that [Lee] did not intend [to] be bound by the arbitration provision." Based on the trial court's finding that Lee did not assent to the arbitration provision and defendant's argument on appeal that there is no evidence to support that finding by the trial court, we understand defendant to argue that there is no evidence in the record to support the trial court's conclusion that Lee did not assent to the arbitration agreement. Accordingly, we turn to that question.

Given our standard of review on the issue that defendant raises—whether Lee assented to the arbitration clause—defendant faces an uphill battle. Assent is an issue of fact. *Martin v. Comcast of California*, 209 Or App 82, 97, 146 P3d 380 (2006). Our standard of review dictates that we affirm the trial court's finding that Lee did not assent to the arbitration agreement "if there is any evidence in the record to support it." *Id.*; *accord First Options of Chicago, Inc.*, 514 US at 947-48 (standard of review for finding that the parties agreed to arbitrate "should proceed like review of any other district court decision finding an agreement between parties, *e.g.*, accepting findings of fact that are not 'clearly erroneous' but deciding questions of law *de novo*").

Here, the enrollment agreement form alerted Lee to the terms on the back, including the arbitration clause. Below the arbitration clause, the enrollment agreement form requested Lee's initials. Lee did not initial the arbitration clause. The failure to initial is evidence that Lee did not assent to the arbitration clause.[5]

Defendant's argument that initials are not a requirement of a valid arbitration agreement misses the point. The trial court found that Lee did not assent to the arbitration clause, not that the purported agreement was invalid for lack of formalities. In any event, given the issue that defendant raised on appeal, we affirm the trial court's order denying defendant's motion to compel Lee to arbitrate.

---

[5] Defendant did not challenge, either before this court or before the trial court, the legal basis for analyzing assent to the arbitration clause separately from assent to the enrollment agreement as a whole. Accordingly, we express no opinion as to the propriety of doing so in this or any other case.

The dissent contends that we must address an argument that was not made on appeal, *viz.*, whether the arbitration clause is part of the enrollment agreement. However, we do not "make or develop a party's argument when that party has not endeavored to do so itself." *Butler Block, LLC v. TriMet*, 242 Or App 395, 413, 255 P3d 665 (2011) (internal quotation marks omitted); *see also* ORAP 5.45 ("No matter claimed as error will be considered on appeal unless the claim of error was preserved in the lower court and is assigned as error in the opening brief in accordance with this rule.").[6]

As we stated earlier, defendant assigns error to the trial court's denial of its motion to compel Lee to arbitrate. In support of that assignment of error, defendant argues that the FAA establishes a strong policy favoring arbitration, initials are not a necessary formality to arbitration agreements, and no evidence supports the trial court's finding that Lee did not assent to the arbitration agreement. The dissent quotes portions of defendant's opening brief that focus on defendant's argument that initials are not necessary to formation of an arbitration agreement. But that argument by defendant is distinct from the argument that the dissent makes. Indeed, the dissent concedes that "the presence or absence of [Lee's] initials does not bear on whether the arbitration provision is part of the agreement." 243 Or App at 29 (Armstrong, J., concurring in part and dissenting in part).

Thus, the dissent agrees that the argument defendant actually raised—whether initials are a necessary formality to an arbitration agreement[7]—"does not bear on" the

---

[6] The dissent relies, in part, on arguments made by defendant in a reply brief to advocate for a new view of defendant's argument. But we do not address issues raised for the first time in a reply brief on appeal. ORAP 5.45.

[7] The dissent argues that defendant's reference to our standard of review as *de novo* supports a conclusion that defendant argued that this case presents an issue of contract interpretation. 243 Or App at 32 n 1 (Armstrong, J., concurring in part and dissenting in part). Indeed, defendant cited *Hekker v. Sabre Construction Co.*, 265 Or 552, 555, 510 P2d 347 (1973), for the proposition that we interpret contracts as a matter of law. But defendant also cited *Republic of Nicaragua v. Standard Fruit Co.*, 937 F2d 469, 474 (9th Cir 1991), which holds that courts broadly construe arbitration agreements under the FAA, in contrast to the question raised by the dissent: whether the enrollment agreement contains an agreement to arbitrate. *See Industra/Matrix Joint Venture v. Pope & Talbot*, 341 Or 321, 332, 142 P3d 1044 (2006) (questions of *scope* of an arbitration agreement and *whether* parties agreed to arbitrate are distinct).

argument the dissent would like to reach, which is "whether the arbitration provision is part of the agreement." Because we do not make or develop a party's argument when that party has not endeavored to do so itself, *Butler Block, LLC*, 242 Or App at 413, we constrain our review in this case to the arguments that defendant actually made.[8]

We next consider whether the trial court erred in denying defendant's motion to stay the actions brought by those plaintiffs who did not agree to arbitration. Defendant argues that, under section 3 of the FAA, if a proceeding involves some issues that are subject to arbitration and others that are not, then the issues that are not subject to arbitration must be stayed until the issues that are subject to arbitration are arbitrated. Therefore, defendant concludes, because actions brought by some plaintiffs are subject to arbitration, the actions brought by the other plaintiffs must be stayed. That is because—according to defendant—if the trial court adjudicates the nonarbitrating plaintiffs' claims, that adjudication could have a preclusive effect on the arbitrating plaintiffs' claims "and would thereby improperly invade the arbitrator's jurisdiction." Plaintiffs respond that their claims are permissively joined, ORCP 28 A, and can be separated. Further, plaintiffs contend that defendant's all-or-nothing approach would enforce an arbitration agreement on plaintiffs who never agreed to arbitrate.

---

Moreover, the dissent fails to quote defendant's description of our standard of review: "When a court reviews a lower court's decision under the *de novo* standard, the reviewing court regards the contents of the case before it as if the matter had originated in that court. *In other words, the reviewing court does not give the lower court's findings any deference.*" (Emphasis added.) Given defendant's explanation of our standard of review, we disagree with the dissent's contention that defendant's description of our standard of review suggests that defendant asked us to review the enrollment agreement as a matter of law.

[8] As to the other argument that defendant made, that "[t]here is no evidence that [Lee] did not intend [to] be bound by the arbitration provision," Lee's failure to initial the arbitration agreement is evidence that Lee did not assent to the arbitration clause. The dissent contends that it is impermissible to draw an inference of a lack of assent from missing initials because doing so "would lead to arbitrary decision-making because one court might infer that the missing initials meant that Lee had not agreed to the provision while another court might not draw that inference." 243 Or App at 33 n 4 (Armstrong, J., concurring in part and dissenting in part). That argument miscasts our standard of review, which is for *any evidence* that supports the trial court's findings of fact. *Martin,* 209 Or App at 97. The dissent's argument that we should accept a trial court's findings only when all courts would make the same factual findings belies that well-established standard of review.

The FAA provides "two parallel devices for enforcing an arbitration agreement: a stay of litigation in any case raising a dispute referable to arbitration, 9 USC § 3, and an affirmative order to engage in arbitration, [9 USC] § 4." *Moses H. Cone Hospital v. Mercury Constr. Corp.*, 460 US 1, 22, 103 S Ct 927, 74 L Ed 2d 765 (1983). Section 3 provides:

> "If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration."

Section 3 does not govern actions brought by plaintiffs who are not bound by an arbitration agreement. *Moses H. Cone Hospital*, 460 US at 20. Thus, in cases where not all parties to a dispute are bound by an arbitration agreement, the trial court must treat the parties who agreed to arbitrate separately from those who did not agree to arbitrate, and the "two disputes will be resolved separately," with one resolved in arbitration and the other in court. *Id.* As to whether the actions remaining in the trial court should be stayed, the United States Supreme Court has noted that there are times when it is advisable to stay the litigation of the nonarbitrating parties pending the outcome of the arbitration, but that decision is left to the trial court "as a matter of its discretion to control its docket." *Id.* at 20 n 23. Accordingly, we must determine, first, whether the parties are bound by an arbitration agreement and, second, whether the trial court abused its discretion in denying defendant's motion for a stay.

As to the first question, defendant concedes that those plaintiffs who were not compelled to arbitrate are not bound by an arbitration agreement. We agree. Those plaintiffs did not expressly enter an arbitration agreement, and defendant does not raise any other theory that would bind those plaintiffs. Thus, the trial court had discretion to stay the claims of those plaintiffs who were not compelled to arbitrate.

As to the second issue—whether the trial court abused its discretion in denying a stay of the actions brought by plaintiffs who were not bound by a mandatory arbitration agreement—defendant does not assert that the trial court abused its discretion. Accordingly, we conclude that the trial court did not err in denying defendant's motion to stay actions brought by plaintiffs who did not agree to arbitration.[9]

Appeal as to plaintiff Jennifer Taylor dismissed; otherwise affirmed.

**ARMSTRONG, J.,** concurring in part and dissenting in part.

Plaintiff Lee entered into a written enrollment agreement with defendant College of Legal Arts, Inc., "for instruction in the skills necessary for the profession of" court reporting. The enrollment agreement included a provision on the front side of the two-sided contract that provided, under the caption "**NOTICE TO STUDENT**":

> "By signing this enrollment agreement you acknowledge that you have read it completely and understand its content and that you have received a completed copy of this contract and its attachments, including the school catalog, with insertions. The terms and conditions of the back of this form and the policies in the catalog are part of this enrollment agreement. Do not sign this enrollment agreement if blank spaces have not been filled in."

---

[9] Defendant also argues that ORS 36.625(7) mandates a stay of all litigation in the trial court. Although defendant does not explain why that state statute applies when this action is subject to the FAA, we note that ORS 36.625(7) is no help to defendant.

ORS 36.625(7) provides:

"If the court orders arbitration, the court on just terms shall stay any judicial proceeding that involves a claim subject to the arbitration. *If a claim subject to the arbitration is severable, the court may limit the stay to that claim.*"

(Emphasis added.) That statute authorizes the court to limit a stay to arbitrable claims that are severable from other claims. Here, the actions brought by plaintiffs were permissively joined under ORCP 28 A. Each plaintiff brought an individual action based on a unique enrollment agreement signed by each plaintiff. ORCP 28 B permits a court to "order separate trials or make other orders to prevent delay or prejudice." Accordingly, plaintiffs' actions are also severable. Thus, under ORS 36.625(7), the trial court properly severed the actions brought by the plaintiffs who did not agree to arbitrate and avoided forcing a consequence of mandatory arbitration on plaintiffs who never agreed to arbitrate.

At the bottom of the second of two columns on the back of the agreement is a paragraph entitled "**ARBITRATION AGREEMENT**." It provides:

> "Any dispute arising from enrollment at College of Legal Arts, no matter how described, pleaded or styled, shall be resolved by binding arbitration and by a single arbitrator, under the Federal Arbitration Act conducted by the American Arbitration Association ('AAA') at Portland, OR, under its Commercial Rules. All determinations as to the scope, enforceability of this Arbitration Agreement shall be determined by the Arbitrator, and not by a court. The award rendered by the arbitrator may be entered in any court having jurisdiction."

Just below that paragraph are the words "Student's initial" with a line for the student to initial. In Lee's enrollment agreement, the line is blank.

Along with others, Lee sued defendant and a company that had purchased defendant, Cascade Education, LLC, (collectively, defendant) under various theories of liability. Defendant moved to compel arbitration with the plaintiffs who had entered enrollment agreements that included the quoted arbitration provision and to stay the case pending resolution of that arbitration for the balance of the plaintiffs who had entered enrollment agreements that did not include the arbitration provision. The trial court granted the motion to compel arbitration as to five of the plaintiffs, but not as to Lee. The court reasoned that the absence of Lee's initials on the line below the arbitration provision created a factual question about whether Lee had agreed to the provision, and it resolved that question by finding, based on the missing initials, that Lee had not agreed to it.

The majority treats the question whether Lee had agreed to the arbitration provision as a factual question, subject to review on appeal for any evidence, and affirms the trial court on the ground that the absence of Lee's initials is evidence that she did not agree to it. 243 Or App at 23. That treatment of the question is fundamentally flawed. The question whether the arbitration provision is part of the written agreement between the parties presents a legal, not a factual, question. And, as I will explain, the answer to that

question is that the arbitration provision is part of Lee's enrollment agreement.

Because the parties entered a written agreement, the meaning of that agreement presents a legal question. *See, e.g.*, *Valenti v. Hopkins*, 324 Or 324, 331-32, 926 P2d 813 (1996). That means that a court must consider the entire agreement to resolve the meaning of any provision in it. As noted, the agreement includes among the terms on its front side: "The terms and conditions of the back of this form and the policies in the catalog are part of this enrollment agreement." The arbitration provision is on the back of the form, so, based on the quoted language, the arbitration provision is part of the parties' agreement, unless some other provision of the agreement affects the meaning of the quoted language. I do not believe that the absence of Lee's initials on the line labeled "Student's initial" below the arbitration provision can be understood to negate the quoted language. In light of the quoted language, Lee's initials are not required to make the arbitration provision a part of the agreement. Hence, the presence or absence of her initials does not bear on whether the arbitration provision is part of the agreement.

Furthermore, it is evident that the line for the student's initials was placed in the form as part of a belt-and-suspenders effort to forestall a challenge to the enforceability of the arbitration provision. As quoted above, the front of the form includes an acknowledgement that the student has "read [the enrollment agreement] completely and understand[s] its content." In light of the likely challenge by students to the arbitration provision—reflected by the challenge to it by the plaintiffs in this case on unconscionability grounds, raising both procedural and substantive objections—the inclusion of a space for student initials below the provision is intended to make a procedural unconscionability objection much more difficult. Of course, as with Lee's execution of the enrollment agreement, defendant's employees can fail to ensure that students initial the form, thereby making the unconscionability challenge for those students stronger, but that does not alter the import of the line for, and the placement of, student initials on the form.

That understanding is bolstered by the fact that there is a line for only the student to initial. If initialing the form below the arbitration provision were necessary to make the provision a part of the agreement—which, again, would fly in the face of the provision that states that "[t]he terms and conditions of the back of [the] form * * * are part of [the] enrollment agreement"—then it presumably would be necessary for both parties to initial the agreement below the arbitration provision.

In light of the foregoing, I believe that the agreement is susceptible to only one understanding about the arbitration provision, and that is that the presence or absence of Lee's initials has no bearing on whether the arbitration provision is part of the agreement. Hence, the trial court erred in concluding that it was not.

The majority does not attempt to defend on its merits the trial court's decision to deny enforcement of the arbitration provision against Lee. Rather, it reasons that defendant failed to frame the issue on appeal as a legal, rather than a factual, issue and, hence, that it would be improper for us to do that. As I will demonstrate, defendant did, in fact, frame the issue on appeal as a legal, not a factual, issue, so the majority's premise is simply wrong. Furthermore, even if the majority's premise were correct, its decision still would be wrong because, contrary to its and the trial court's conclusion, the absence of Lee's initials is not evidence that could support a finding that Lee did not agree to make the arbitration provision part of the enrollment agreement.

Defendant's opening brief stated the assignment of error on the enforceability of the arbitration provision to be:

"The trial court erroneously denied Defendant's Motion to Compel Arbitration as to Plaintiff Lee based on its incorrect conclusion that the arbitration agreement is not enforceable because Plaintiff Lee did not initial the arbitration provision."

Defendant summarized its argument on that assignment as follows:

"The trial court erred by failing to enforce the arbitration agreement between Plaintiff Lee and Defendant.

Plaintiff Lee signed an enrollment agreement [that] contained an admittedly valid agreement to arbitrate. The trial court declined to compel arbitration by concluding that the mere absence of Plaintiff Lee's initials from the arbitration provision renders it unenforceable. * * * Neither federal nor state law requires an arbitration agreement to be initialed to be enforceable. The arbitration agreement is contained within the Enrollment Agreement signed by Plaintiff Lee. That is all that can be required. It was enforced against each of the plaintiffs [who] separately initialed the arbitration provision, and should have been enforced against Plaintiff Lee as well."

Defendant's argument on that point in the body of its brief is consistent with the summary of it:

"The trial court erroneously concluded that the arbitration agreement is not enforceable solely because Plaintiff Lee did not initial the arbitration provision. There is no requirement under the FAA * * * that an arbitration provision be initialed to be enforceable.

"The only requirement under the FAA * * * is that [the] arbitration agreement be in writing. The arbitration agreement in the Enrollment Agreement is in writing. The arbitration agreement is denoted with the heading '**ARBITRATION AGREEMENT**' which is capitalized, bolded, and underlined. Additionally, the Enrollment Agreement contains a '**NOTICE TO STUDENT**' which is set out in all capitals and bolded [that] provides, in pertinent part: 'by signing this enrollment agreement you acknowledge that you have read it completely and understand its content . . . [.]' Plaintiff Lee signed the Enrollment Agreement. * * * There is no evidence that Plaintiff [Lee] did not intend [to] be bound by the arbitration provision. The mere fact that Plaintiff Lee failed to initial the arbitration provision is of no significance because there is no requirement under federal or state law that the arbitration agreement be initialed to be enforceable."

(Boldface, capitalization, and underscoring in original; citations omitted.) Although defendant's argument could have been better framed and made more compelling, defendant did not suggest in its brief that the enforceability question presents a factual rather than a legal question.

Defendant's reply brief is to the same effect. It summarizes defendant's reply argument as follows:

"Plaintiff Lee's assertion that she did not assent to the arbitration agreement because she did not initial the provision is contrary to the facts and the law. The law favors enforcement of arbitration agreements and does not require a party to separately sign or initial an arbitration provision within an overall, signed contract for it to be enforceable. Plaintiff Lee manifested her assent to the arbitration agreement by signing a valid and enforceable Enrollment Agreement, which contained the arbitration provision, and by accepting the benefits conferred by the Enrollment Agreement."

Here, again, defendant's argument does not suggest that the enforceability of the arbitration provision presents a factual rather than a legal question.[1] I will not quote the body of the reply argument, but nothing in it alters the import of the quoted summary or the opening brief on that point.

In summary, the majority's treatment of the question on appeal as a factual question simply perpetuates the trial court's error in doing the same thing. It is not the product of defendant's argument on appeal.[2]

---

[1] To avoid any misunderstanding, the summary begins with the statement: "The trial court erred by: (1) finding that the mere absence of Plaintiff * * * Lee's initials from the arbitration agreement paragraph within a signed contract renders it unenforceable[.]" The reference to the trial court's "finding" simply identifies what the trial court actually did: it found that the absence of Lee's initials meant that Lee had not assented to the arbitration provision. It does not signify that the question on appeal is a factual question that depends on whether there is evidence to support the trial court's finding. (And, even if it did, the fact that there is no evidence in the record other than the written agreement means, as a consequence, that the question that the court must answer is a legal rather than a factual question.) Similarly, defendant's opening brief contains boilerplate statements about *de novo* review of a denial of a motion to compel arbitration, citing federal cases and, apparently, equating *de novo* review with independent review of legal questions, as federal courts treat that issue, by following a citation to a federal case with a citation to an Oregon case: "*See Hekker v. Sabre Construction Co.*, 265 Or 552, 555[, 510 P2d 347] (1973) ('As a general rule the construction of a contract is [a] question of law for the court.')."

[2] In a related vein, the majority asserts that "[d]efendant did not challenge, either before this court or before the trial court, the legal basis for analyzing assent to the arbitration clause separately from assent to the enrollment agreement as a whole." 243 Or App at 23 n 5. Defendant did not have to frame the issue that way in order to require us to address it, because its assignment of error necessarily encompasses the issue by assigning error to the trial court's denial of its motion to

Furthermore, even if defendant had treated the question on appeal as a factual question—that is, whether Lee had agreed to the arbitration provision—the majority's resolution of that question would still be wrong. The parties submitted no extrinsic evidence on the execution of the enrollment agreement, on the purpose of the line for student initials in the agreement, or on the significance or meaning of the absence of Lee's initials on it. Because there is no extrinsic evidence that bears on whether the arbitration provision is part of Lee's written agreement, there is no evidence in the record on which the trial court could make a finding on that issue. That is because the written agreement cannot, on its own, constitute the evidence on which to make a finding on the content or meaning of the written agreement.[3] It follows that we cannot affirm a finding that the trial court made when there is no evidence in the record on which the trial court could have made the finding.[4]

For all of the foregoing reasons, I respectfully dissent from the majority's decision to affirm the trial court's denial of defendant's motion to compel Lee to arbitrate her claims against defendant.

Duncan, J., joins in this dissent.

---

compel Lee to arbitrate her claims against it. The majority certainly does not address the issue, but that is not because of any deficiency in defendant's assignment of error or argument.

[3] That is why an ambiguous written agreement is construed against its drafter when there is no evidence, other than the agreement, that bears on its intended meaning. *See, e.g., Andrews v. Sandpiper Villagers, Inc.*, 215 Or App 656, 664, 170 P3d 1098 (2007); *Berry v. Lucas*, 210 Or App 334, 339, 150 P3d 424 (2006). In other words, the content or meaning of the written agreement is resolved on a legal, rather than a factual, basis in that circumstance.

[4] Implicit in the majority's conclusion is the proposition that a factfinder could infer from the missing initials that Lee had not agreed to the arbitration provision. That is not a permissible basis on which to resolve that issue because the decision on whether Lee had agreed to the arbitration provision cannot properly turn on the inference that a factfinder draws from the fact that Lee did not initial the line below the arbitration provision. If it did, it would lead to arbitrary decision-making because one court might infer that the missing initials meant that Lee had not agreed to the provision while another court might not draw that inference. On the record in this case, the import of the missing initials necessarily presents a legal question for which there can be only one legally correct answer. It cannot be treated as a factual question for which either of two contradictory answers would be legally correct answers. *Cf., e.g., Andrews*, 215 Or App at 664 (construction maxim applied in resolving ambiguous written contract where extrinsic evidence does not resolve ambiguity).