Argued May 26, affirmed July 15, petition for rehearing denied
August 10, petition for review denied September 28, 1971

CAPPER, *Appellant, v.* TARLOW ET AL,
*Respondents.*
486 P2d 1298

*Reuben Lenske,* Portland, filed the briefs for appellant.

*Roscoe C. Nelson,* Portland, argued the cause for respondents. With him on the brief was John P. Bledsoe, Portland.

Before FOLEY, Presiding Judge, and FORT* and THORNTON, Judges.

FOLEY, J.

On January 15, 1968, plaintiff filed a claim against the estate of Milton D. Tarlow, deceased, for the sum of $11,100.54 based upon a promissory note, dated April 24, 1953, given by decedent to plaintiff for $8,547.95 plus accumulated interest, attorney fees and advances to pay delinquent taxes less certain payments allegedly made upon the debt. The claim was rejected by Elvin Tarlow, executor of the estate and defendant herein. Following a hearing on the matter the probate court denied plaintiff's claim on December 19, 1968. Plaintiff then requested and received a trial de novo in circuit court. On June 3, 1970, that court issued its judgment against plaintiff and he now appeals to this court.

■ Contrary to plaintiff's contentions, this proceeding is an action at law rather than a suit in equity. Plaintiff seeks a money judgment against decedent's estate and his remedy, if any, is in law, not equity. *Fleming v. Wineberg,* 253 Or 472, 455 P2d 600 (1969); *Carey v. Hays,* 243 Or 73, 409 P2d 899 (1966). Plaintiff cites in support of his position the former ORS 121.230 (since repealed) which subjected a decedent's next of kin to a suit in equity by a creditor of the estate to recover the distributive shares received from the estate. That statute is inapplicable here because

* Fort, J., did not participate in this decision.

decedent died testate. There is also another ground for rejecting plaintiff's contention. ORS 121.230 was part of a series of statutes authorizing a creditor of an estate to bring suit against the legatees and the devisees of a testator, as well as against the next of kin and the heirs of a decedent, to satisfy the debt. These provisions contemplate the prior distribution of the assets of the estate to the beneficiaries. Since plaintiff's complaint was filed against the estate and before any distribution occurred, none of these statutory sections applies. See *First Nat. Bank v. Connolly,* 172 Or 434, 138 P2d 613, 143 P2d 243 (1943).

Furthermore, the mere fact that in the second count of his complaint plaintiff asserts that it would be "inequitable" to deny payment of his claim does not make this cause one in equity. The pleadings, not the label given them, determine the nature of the proceeding. *Thompson v. Hibbs,* 45 Or 141, 76 P 778 (1904).

Since this is an action at law the factual findings of the trial court occupy the same status as does a jury verdict. We are bound by them if they are supported by any substantial competent evidence. *Atlantic Union Conf. v. West. Sav.,* 257 Or 266, 476 P2d 924 (1970); *State ex rel Salem Pac. v. Combo Constr.,* 254 Or 89, 458 P2d 410 (1969); *Cronn v. Fisher,* 245 Or 407, 422 P2d 276 (1966). The trial court found *inter alia* "[t]hat the indebtedness for which Plaintiff's purported cause of action was brought had heretofore been satisfied."

The history of this claim begins on April 24, 1953, when Milton Tarlow executed a promissory note to Dr. Capper in the amount of $8,547.95 payable 30 days after demand with interest at 6 per cent per annum. The note was secured by a mortgage between

Oregon Enterprises, a corporation apparently owned by Tarlow, and one Bernice Klinefelter which was assigned to plaintiff. The mortgage covered certain real property located in North Bend, Oregon.

The record in regard to the years following the initial transaction consists principally of a less than lucid conglomeration of correspondence between plaintiff's attorney Reuben Lenske and several other persons. In fact, plaintiff admitted, and the evidence supports him, that Mr. Lenske handled this matter from the outset and that he, plaintiff, had little more than a general knowledge of the status of the transaction.

The claim against the estate includes payments by Reuben Lenske for delinquent taxes on the mortgaged property and attorney fees for services rendered in protecting the property. Mr. Lenske asserts that he assigned to Dr. Capper whatever claims he might have had against decedent, allegedly with the latter's approval.

In 1960 Oregon Enterprises and Milton Tarlow assigned rents to Reuben Lenske as attorney for Dr. Capper. Payments were apparently made until mid-1962 when the buildings earning the rents were condemned.

On January 31, 1963, the Internal Revenue Service offered for public sale the mortgaged property which it had seized for nonpayment of taxes. David George, an agent of Mr. Lenske, purchased the property for $20. By special warranty deed the agent transferred the property to Manifold Business and Investments Inc., a corporation owned by Lenske and his wife, but the deed was apparently not recorded. George subsequently received a quitclaim deed from the Internal Revenue Service.

At this point the record becomes unclear as to the subsequent chain of events. However, it seems that in August of 1964 David George and his wife purchased a business from one Donald Ashford and his wife. The purchase price was secured by a deed of trust on the Tarlow property. The Georges defaulted on their obligation and Ashford foreclosed on the deed of trust. In attempting to secure an insurable title to the subject property, Ashford discovered the 1953 assignment of mortgage to Dr. Capper. Ashford thereupon contacted claimant and obtained from him a properly executed satisfaction of mortgage, dated March 28, 1966, acknowledging full payment and satisfaction of the mortgage and debt secured thereby.

Previously, on July 2, 1962, Mr. Lenske had executed a promissory note in the amount of $15,000 payable to Dr. Capper and a mortgage in like amount on his residence in Portland. Testimony by both Lenske and Capper indicates that the note and the mortgage were considered as security against any losses Dr. Capper might suffer on investments made for him by Mr. Lenske, including the Tarlow transaction. Lenske executed a second mortgage on his home in favor of Dr. Capper, apparently to secure a personal loan of $10,000.

The foregoing summary of the facts in this case, though excluding some explanatory and contradictory testimony, contains sufficient evidence to sustain the trial court's finding that the indebtedness of Milton Tarlow to George Capper had previously been satisfied. Whether or not Reuben Lenske might have had a valid claim against the estate of decedent is a matter not in issue since Dr. Capper, rather than Mr. Lenske, was the claimant here.

Affirmed.