Argued and submitted March 31, 2010, reversed and remanded with instructions to enter judgment consistent with this opinion May 25, 2011

In the Matter of the
Application for Delayed Registration of Birth of
Jorge Garcia-Eusiquio.

Nicolaza EUSIQUIO,
*Petitioner-Appellant,*

*v.*

STATE OF OREGON,
by and through the Department of Human Services,
Center for Health Statistics,
*Respondent-Respondent.*

Marion County Circuit Court
08C19393; A141109

259 P3d 917

Brenda M. Bradley argued the cause for appellant. With her on the briefs were Janice R. Morgan and Legal Aid Services of Oregon.

Linda Wicks, Assistant Attorney General, argued the cause for respondent. With her on the brief were John R. Kroger, Attorney General, and Jerome Lidz, Solicitor General.

Before Brewer, Chief Judge, and Haselton, Armstrong, Wollheim, Schuman, Ortega, Sercombe, Duncan, and Nakamoto, Judges, and Rosenblum, Senior Judge.

ORTEGA, J.

Armstrong, J., dissenting.

### ORTEGA, J.

Petitioner appeals from a general judgment denying her petition for a court-ordered birth certificate for her minor son. ORS 432.142. On *de novo* review, we reverse and remand.

Petitioner, a resident of Washington State, alleges that she gave birth to her son in a migrant camp near North Plains, Oregon, on January 22, 2005. She testified that she lived at the migrant camp in North Plains with her cousin Rosaura Hernandez from November 2004 to February 2005. She asserted that she gave birth to her son while in Oregon, but that she never sought prenatal care or any medical care in Oregon after the birth. According to petitioner, due to an incident around the time of her oldest daughter's birth, she feared that her son's father would be arrested if authorities were informed that petitioner and the father had conceived another child. Petitioner testified that Hernandez was the only other person present at the birth and that Hernandez helped deliver the baby. She asserted that she never sought medical care in Oregon, that she "hardly ever" left Hernandez's house after the birth, and that she did not apply for a birth certificate at that time. Further, she admitted that she had no documentation that would verify that she was in Oregon at the time of her son's birth.

Hernandez also testified and corroborated petitioner's account. She acknowledged that she and petitioner were the only attendees to the birth and that she assisted with the delivery. Hernandez confirmed that, during petitioner's time in Oregon, petitioner rarely left the house because it was winter.

Petitioner applied to the State Registrar of the Center for Health Statistics of the Department of Human Services under ORS 432.140 for issuance of a delayed birth certificate. That statute provides, in relevant part:

"(1) When a certificate of birth of a person born in this state has not been filed within one year after the date of birth, a delayed certificate of birth may be filed in accordance with rules of the State Registrar * * *. No delayed certificate shall be registered until the evidentiary requirements as specified by rule have been met.

"* * * * *

> "(4)(a)   When an applicant does not submit the mini-
> mum documentation required by rule of the state registrar
> for delayed registration or when the state registrar has
> cause to question the validity or adequacy of the applicant's
> sworn statement or the documentary evidence, and if the
> deficiencies are not corrected, the state registrar shall not
> register the delayed certificate of birth and shall enter an
> order to that effect stating the reasons for the action. The
> state registrar shall advise the applicant of the right to
> appeal under ORS 183.480 to 183.484."

In accordance with the statute, the state registrar has prom-
ulgated rules that establish the minimum documentation
required for issuance of a delayed birth certificate. *See* OAR
333-011-0043(4) - (11). In this case, the state registrar denied
petitioner's application because the rule required petitioner
to submit two pieces of documentary evidence in support of
the delayed birth certificate, but petitioner submitted only
one acceptable document, an affidavit in which she attested
to her son's birth in Oregon.[1] OAR 333-011-0043(7) (requir-
ing two pieces of documentary evidence when the application
is filed within seven years of the birth date, only one of which
can be an affidavit of personal knowledge). Petitioner then,
as provided by ORS 432.142, filed the petition that is at issue
on appeal.

ORS 432.142 provides the procedure for an applicant
to seek a court-ordered birth certificate in the event that the
state registrar has refused to issue a delayed birth certificate.
We set out that statute in full because it is important to the
discussion that follows.

> "(1)   If the [state registrar] refuses to file a delayed cer-
> tificate of birth under the provisions of ORS 432.140, the
> applicant may file a signed and sworn petition with a court
> of competent jurisdiction seeking an order establishing a
> record of the date and place of birth and the parentage of
> the person whose birth is to be registered.

---

[1] Petitioner also submitted an affidavit from her own mother attesting to peti-
tioner's son's birth in Oregon and an affidavit from her son's father voluntarily
acknowledging paternity.

"(2) The petition shall be made on a form prescribed and furnished or approved by the state registrar and shall allege:

"(a) That the person for whom a delayed certificate of birth is sought was born in this state;

"(b) That no certificate of birth of the person can be found in the records of the Center for Health Statistics;

"(c) That diligent efforts by the petitioner have failed to obtain the evidence required in accordance with ORS 432.140 and rules adopted pursuant thereto;

"(d) That the state registrar has refused to file a delayed certificate of birth; and

"(e) Such other allegations as may be required under ORS 183.480 and 183.484.

"(3) The petition shall be accompanied by a statement made in accordance with ORS 432.140 and all documentary evidence which was submitted to the state registrar in support of the filing.

"(4) The court shall fix a time and place for hearing the petition and shall give the state registrar notice of the hearing. The state registrar or an authorized representative may appear and testify in the proceeding.

"(5) If the court finds, from the evidence presented, that the person for whom a delayed certificate of birth is sought was born in this state, it shall make findings as to the place and date of birth, parentage and such other findings as may be required and shall issue an order, on a form prescribed and furnished or approved by the state registrar, to establish a court-ordered certificate of birth. This order shall include the birth data to be registered, a description of the evidence presented and the date of the court's action.

"(6) The clerk of the court shall forward each order to the state registrar not later than the 10th day of the calendar month following the month in which it was entered. The order shall be registered by the state registrar and shall constitute the certificate of birth."

In this case, the testimony of petitioner and Hernandez was the only evidence presented on petitioner's behalf at the hearing; the affidavits that she had submitted to the state

registrar under ORS 432.140 were also attached to her petition to the court. At the start of the hearing, the state registrar took the position that if the court "believe[d that] the testimony of the witnesses is not determinative of the fact—the alleged fact of whether [petitioner's son] was born in the [S]tate of Oregon * * * we ask that you deny the delayed birth certificate." The court then asked the state registrar if the law allowed the court to grant the petition if it found that the "testimony is determinative of that fact[.]" The state registrar responded that the court could grant the relief requested if the court found the testimony sufficient to establish the facts at issue because the court's determination was subject to a "totality of the evidence standard." At the close of testimony, petitioner urged the court to grant the petition based on the testimony of the two witnesses, and because the state did not offer any contradictory evidence.

The court then filed a letter opinion denying the petition, but stated that the court would "be pleased" to review any additional corroborating evidence submitted by petitioner before judgment was entered. In its letter opinion, the court explained that, although this is an "unfortunate case," there is

> "simply no evidence in the record to corroborate the testimony of [petitioner,] who has not lived in Oregon for more than 3 years. The court is certainly mindful of the need for a birth certificate for [son], but absent corroborating evidence, I do not find that [p]etitioner has met [her] burden of proof. * * * If there is additional evidence that can be presented, I would be pleased to review that."

Curiously, while no documentary evidence was submitted to corroborate petitioner's testimony, petitioner did produce corroborating testimonial evidence, and the court did not indicate any problems with that evidence. In all events, the court subsequently entered a general judgment denying the petition.

On appeal, petitioner assigns error to the trial court's ruling that she failed to meet her burden of proof because she lacked documentary evidence of her son's birth. In particular, she argues that the trial court misinterpreted ORS 432.142 because it denied her petition specifically

because she lacked documentary evidence. That is, petitioner contends that the statute allows the court to enter a court-ordered birth certificate based solely on testimonial or other nondocumentary evidence, and the court erred as a matter of law by determining otherwise.

The state registrar takes issue with petitioner's characterization of the trial court's decision, maintaining that the letter opinion does not, as petitioner contends, require petitioner to present documentary evidence to qualify for a court-ordered delayed birth certificate under ORS 432.142.[2] Rather, the state registrar contends, the court's letter opinion simply recounts the types of evidence that petitioner did and did not present and indicates that, ultimately, the court was not persuaded by the evidence presented. That is, the decision was based on a failure of proof, rather than an incorrect interpretation of the statute.

Before we can reach the merits of this appeal, we must determine the source of our appellate jurisdiction because it dictates our standard of review. In her brief, petitioner asserts that she is appealing pursuant to ORS 183.500, which authorizes appeals from judicial review proceedings in a circuit court under the Administrative Procedures Act (APA). The state registrar cites ORS 19.205(5) as the source of our appellate jurisdiction. ORS 19.205(5) grants the right to appeal from a circuit court decision in any "special statutory proceeding." However, both parties merely reference the statutes in passing and, despite their apparent disagreement, they offer no argument on the issue.

A careful reading of the relevant statutes clarifies that the process set forth in ORS 432.142 is separate from any judicial review proceedings available under the APA. However, before we discuss the specific statute at issue in this case, we begin with some background and historical context of Oregon's vital statistics laws in general and the statutes addressing delayed birth certificates in particular.

---

[2] The state registrar also asserts that petitioner failed to preserve her claim of error. We reject that argument without discussion.

In general, Oregon's vital statistics laws have closely tracked the provisions found in the Model State Vital Statistics Act (Model Act). The federal Bureau of the Census submitted the first Model Act in 1907 in an effort to bring some uniformity to national vital records and statistics. Alice M. Hetzel, *National Center for Health Statistics, Centers for Disease Control and Prevention, U.S. Department of Health and Human Services, U.S. Vital Statistics System Major Activities and Developments, 1950-95*, 5 (1997). In an effort to continually improve the national vital statistics system and keep the Model Act current with "changing demands upon State vital records systems," the act was revised in 1941, 1959, 1977, and 1992. *Id.* at 6. After each such revision, the Oregon legislature has generally revised Oregon law to reflect those changes and to keep Oregon's system of issuing vital records and collecting vital statistics in conformity with the national standards. *See* Or Laws 1941, ch 130 (enacting comprehensive vital statistics statutes); Or Laws 1983, ch 709 (revising ORS chapter 432 to reflect changes from the 1977 Revision to the Model Act); Or Laws 1997, ch 783 (revising ORS chapter 432 to reflect changes from the 1992 Revision to the Model Act).

As for delayed birth certificates, the Oregon legislature enacted a series of laws from 1939 through 1943 that established a method for registering previously unrecorded births. Briefly, the legislature created a judicial procedure in 1939 whereby a person with an unregistered birth could file an application, supported by affidavits, with the county probate judge. Or Laws 1939, ch 165. The judge was required to examine the application, take testimony as needed, and then issue an order, if satisfied that the facts were as stated, to the state health officer to register the birth. *Id.*

In 1941, the legislature enacted a comprehensive rewrite of Oregon's vital statistics laws, which included a provision that stands as a precursor to ORS 432.140. Or Laws 1941, ch 130, §§ 16-17. The 1941 law stated that the acceptance of a birth certificate more than six months after the time prescribed for filing "shall be subject to regulations in which the board shall prescribe in detail the proofs to be submitted by any applicant for delayed filing * * *, or to the order

of the county court or any other court of competent jurisdiction." *Id.* § 16. In addition, the law also required the state registrar to distinctly mark the birth certificate "delayed" and to include a summary statement of the "evidence submitted in support of" the delayed filing. *Id.* § 17.

In 1943, the legislature revised the judicial procedure that was originally enacted in 1939 and provided for a more comprehensive court proceeding. Or Laws 1943, ch 118 (*see also* ORS 432.255 to 432.280 (1953)). That procedure allowed a person whose birth had not been recorded to file a verified petition in circuit court setting forth the facts of the petitioner's birth. *Id.* § 1. The petitioner was required to serve the district attorney with the petition, and after service, the petitioner was allowed to appear before the court and present "such evidence as is available in support of" the statements of the petition. *Id.* §§ 2-3. The district attorney was allowed to appear and examine witnesses or submit proof in support or in objection to the petition. *Id.* If the court was satisfied that the facts stated in the petition were supported by substantial evidence, the court was to make findings as to the facts of the birth and order the state registrar to register the birth. *Id.* §§ 4-5.

The delayed birth certificate statutes remained essentially unchanged until 1983, when the legislature amended ORS chapter 432 in response to the 1977 Model Act revisions. Or Laws 1983, ch 709. The 1977 Model Act revisions required a petitioner to first apply to the applicable administrative agency for a delayed birth certificate before filing a petition in court. Model State Vital Statistics Act § 10 (1977). Oregon, however, altered the wording from the Model Act and added provisions specific to Oregon's judicial review process under the APA. The law ultimately enacted by the legislature explicitly placed any "appeal" of the state registrar's denial of a delayed birth certificate under the judicial review provisions of the APA.

After the 1983 amendment to ORS 432.140(4)(a), the statute stated:

"When an applicant does not submit the minimum documentation required by the rule of the state registrar for

delayed registration or when the state registrar has reasonable cause to question the validity or adequacy of the applicant's sworn statement or the documentary evidence * * * the state registrar shall not register the delayed certificate of birth and shall enter an order to that effect stating the reasons for the action. The state registrar shall advise the applicant of the right to appeal under ORS 183.480 and 183.484."

The legislature also completely revamped ORS 432.135 and renumbered the provision ORS 432.142. Of particular note, after the amendment, ORS 432.142(1) stated that:

"[i]f application for a delayed certificate of birth is ordered rejected under ORS 432.140, the applicant may appeal the order under ORS 183.480 and 183.484."

In conjunction with the changes to ORS 432.140 and ORS 432.142, the legislature repealed the statutory provisions that provided for a separate court proceeding. Or Laws 1983, ch 709, § 45. Accordingly, the legislature brought the entire process for receiving a delayed birth certificate within the judicial review provisions of the APA.

In 1997, however, the legislature again amended the delayed birth certificate statutes as part of a larger rewrite of ORS chapter 432, this time in response to the 1992 Model Act revisions. The legislature's 1997 amendments removed the wording in ORS 432.142(1) that "the applicant may appeal the order under ORS 183.480 and 183.484" and replaced it with language from the 1992 Model Act that "the applicant may file a signed and sworn petition with a court of competent jurisdiction seeking an order establishing a record of the date and place of birth and the parentage of the person whose birth is to be registered." The legislature also added the provision requiring the court to set a hearing, give the state registrar notice of the hearing, and allow the state registrar to appeal and testify in the proceeding. *See* ORS 432.142(4). The hearing provision was originally included in the 1977 Model Act revisions, but had not been included in the 1983 revisions to the Oregon statute.

In this case, we must determine what type of process the legislature intended to provide in ORS 432.142: Did the

legislature intend to subject all delayed birth certificate proceedings to the judicial review process, or did the legislature intend to provide for a court proceeding that is independent of judicial review? In determining legislative intent, we consider the statutory text, context, and any relevant legislative history. *State v. Gaines*, 346 Or 160, 172, 206 P3d 1042 (2009).

First, we examine the text of the statute. ORS 432.140 and ORS 432.142, by their stated terms, establish separate processes. The procedure set forth in ORS 432.140 presents a traditional administrative scheme. The applicant can apply to the state registrar for a delayed birth certificate. ORS 432.140(1). The state registrar grants or denies the application based on the evidence submitted with it, depending on whether that evidence meets the minimum documentation required by rule of the state registrar. ORS 432.140(4)(a). If the state registrar denies the application, it must issue an order stating the reasons for the denial. *Id.* ORS 432.140(4)(a) explicitly requires the state registrar to advise the applicant of the right to appeal the final order under ORS 183.480 to 183.484. ORS 183.480 to 183.484 provide that the circuit courts have jurisdiction in judicial review of final orders in other than contested cases and that this court has jurisdiction in judicial review of final orders in contested cases. Those APA provisions also outline the scope of authority in judicial review proceedings, where the reviewing court is limited to examining the agency's order for errors of law, abuse of discretion, and substantial evidence. ORS 183.484(5).

The plain text of ORS 432.142, on the other hand, describes a court proceeding that is separate from the judicial review process. First, ORS 432.142(1) does not explicitly state that the process involves judicial review under the APA. And in fact, as noted, the reference in the statute that explicitly required APA review was removed by the legislature in 1997. Second, although the statute requires the petitioner to submit to the court the evidence that was supplied to the state registrar under ORS 432.140, it does not otherwise implicate any review of the state registrar's final order denying the application. Rather, the circuit court's role (unlike in

judicial review proceedings under the APA) is unequivocally to make its own factual findings and to determine the ultimate fact at issue in such proceedings—whether the person for whom a delayed birth certificate is sought was born in Oregon—rather than reviewing the state registrar's finding as to that fact. *Compare Norden v. Water Resources Dept.*, 329 Or 641, 648-49, 996 P2d 958 (2000) (noting that the parties may develop a record in the circuit court on judicial review in other than contested cases, but that the circuit court's role in reviewing the record is limited to review for substantial evidence).

Only one explicit reference to the APA in ORS 432.142(2)(e) survived the 1997 amendments to the statute: Subsection (2) states that any petition must allege, among other things, "[s]uch other allegations as may be required under ORS 183.480 and 183.484." ORS 432.142(2)(e). However, we disagree with the dissent's view that "[t]here could be no clearer textual indication that the process described in ORS 432.142 is Administrative Procedure Act (APA) review as specified in ORS 432.140 * * *." 243 Or App at 115 (Armstrong, J., dissenting).

Instead, we examine ORS 183.480 and ORS 183.484 to see what "allegations" the legislature intended to require by retaining those statutory references. ORS 183.480 provides, in part, that judicial review is available to "any person adversely affected or aggrieved by an order or any party to an agency proceeding[.]" ORS 183.484 states that jurisdiction in judicial review proceedings in other than contested cases is in Marion County Circuit Court or the circuit court in petitioner's county of residence or principle place of business. It also requires any petition to state the nature of the petitioner's interest, the facts showing how the petitioner is adversely affected or aggrieved, and the asserted grounds for reversal. As a result, the allegations that are required in ORS 432.142(2)(e) include what otherwise might be considered core justiciability concerns: that the petition is filed in an appropriate jurisdiction by a party that has a concrete interest in the case. Although the legislature's retention of text referencing the APA in ORS 432.142(2)(e) is potentially confusing, we do not find it determinative of the nature of the

court's review. We also note that the petition in this case, which is on a form provided by the state registrar, is limited to exactly such allegations.

The 1997 amendments to ORS chapter 432 bolster our conclusion that ORS 432.142 creates a separate statutory proceeding. As noted, the legislature deleted any reference to an appeal under the APA and replaced it with the current language that mimics the 1992 Model Act revisions. *See Krieger v. Just*, 319 Or 328, 336, 876 P2d 754 (1994) ("[W]ording changes adopted from session to session are a part of context of the present version of the statute being construed."). The 1997 amendments also added the requirement that the court shall "fix a time and place for hearing," give the state registrar notice of the hearing, and allow the state registrar to appear and testify in the proceeding. We find this particular change significant for two reasons. First, it makes sense that the explicit hearing requirement in the 1977 Model Act revisions was excluded from the legislature's 1983 amendments because the Oregon amendments made the delayed birth certificate process subject to the APA, which already contained procedural provisions. That is, why include a hearing requirement when the APA already has such a process in place? However, the reinsertion of the Model Act's hearing requirement suggests that the legislature intended to move away from the APA in 1997. Second, if the legislature had intended a decision under ORS 432.142 to be subject to APA review, there would have been no reason to explicitly state that the state registrar may appear and testify in a proceeding under that statute, because the agency is a necessary party under the APA and will have notice of any hearing.

Given the statutory text and the context, we conclude that the legislature intended to return to an independent court process in which a petitioner could establish the facts of a birth separate from the administrative process.

Our conclusion that ORS 432.142 creates a separate statutory proceeding apart from judicial review under the APA leads to the next question: What is the correct standard of review? When an action arises from statute and the legislature has not expressly provided a standard of review, as is

the case here, we examine the "essential nature of the case, including the nature of the relief sought," to determine whether the legislature intended the claim to be legal or equitable in nature. *G. I. Joe's, Inc. v. Nizam*, 183 Or App 116, 122, 50 P3d 1282 (2002); *Hanzo v. deParrie*, 152 Or App 525, 536, 953 P2d 1130 (1998), *rev den*, 328 Or 418 (1999); *see also Thompson v. Coughlin*, 329 Or 630, 636, 997 P2d 191 (2000). In short, we examine the pleadings to determine if the nature of the relief sought is legal or equitable. *McDowell Welding & Pipefitting v. US Gypsum Co.*, 345 Or 272, 279, 193 P2d 9 (2008). However, even if equitable relief is pleaded, if an adequate remedy at law exists, we will not invoke equitable jurisdiction. *Id.* at 280.

Given the nature of the relief available under ORS 432.142, we conclude that the legislature intended the claim to be equitable in nature and, thus, subject to *de novo* review. ORS 19.415 (2007).[3] Petitioner, pursuant to the statute, has requested a court-ordered delayed birth certificate, which is in essence a declaration by the court that petitioner's son was born in Oregon. In addition, when the legislature transferred jurisdiction over certain family-related matters to the circuit courts in 1967, the legislature explicitly stated that the issuance of a delayed birth certificate was within the "exclusive and original judicial jurisdiction" of the circuit courts. ORS 3.260(2)(g). That statute also included mental commitment, domestic relations, and name change cases, all of which were traditionally cases in equity subject to our *de novo* review. In addition, because petitioner's requested relief—a declaration of her son's legal status—is not available at law, we conclude that the claim is equitable in nature. *See G. I. Joe's, Inc.*, 183 Or App at 122 (noting that a traditional legal remedy is relief in the form of a money judgment); *Division of State Lands v. Norris*, 182 Or App 547, 553, 50 P3d 595 (2002) (noting various forms of injunctive and declaratory relief that are equitable in nature); *Capper v. Tarlow*, 6 Or App 235, 236, 486 P2d 1298 (1971) (determining that remedy for a plaintiff seeking a money judgment against an estate is in law).

---

[3] ORS 19.415 was amended in 2009. Or Laws 2009, ch 231, § 2. The amendments apply to appeals in which the notice of appeal was filed on or after June 4, 2009. Or Laws, ch 231, § 3. Because the notice of appeal in this case was filed before that date, we apply the 2007 version of ORS 19.415.

On *de novo* review, we examine the record independently. ORS 19.415(3) (2007). Initially, we note that the basis of the trial court's decision is unclear. The record does not establish that the court accepted the proposition that it could decide the case solely on the basis of testimonial evidence. Although the court and the state registrar's counsel discussed whether the statute allowed the court to issue a court-ordered birth certificate based solely on the hearing testimony, the court never stated its agreement with that legal proposition, and the court's letter opinion does not establish the basis for the court's conclusion.

The court's letter opinion placed particular emphasis on petitioner's failure to provide documentary evidence to corroborate her testimony, noting three times that "no documents were introduced in evidence corroborating that either [petitioner], father, or [son] were present in the state of Oregon" on the date son was born. Indeed, the court goes so far as to state that there was "simply no evidence in the record" to corroborate petitioner's testimony, even though Hernandez's testimony did provide such corroboration and the court did not address the credibility of that testimony. Although the court did not state directly that, as a matter of law, petitioner was required by ORS 432.142 to submit documentary evidence to corroborate the testimony, we are persuaded that the court's conclusion, more likely than not, was based on the lack of documentary evidence, rather than on an implicit finding that petitioner's testimony and the testimony of her corroborating witness were not credible. In light of that likely error by the trial court, we proceed to review the testimony *de novo*, rather than remanding for the trial court to do so in the first instance, especially in light of the need to bring finality to the question of child's legal existence.

Based upon our review of the testimony recounted above, and the affidavits supplied to the state registrar under ORS 432.140, we conclude that petitioner satisfied her burden of establishing that her son was born in Oregon.

Reversed and remanded with instructions to enter judgment consistent with this opinion.

**ARMSTRONG, J.,** dissenting.

I dissent in this case because I believe the majority opinion contains three errors that build on each other to reach an incorrect outcome.

The majority mistakenly concludes that ORS 432.142 establishes a statutory proceeding in the circuit court for the issuance of a delayed certificate of birth that is separate from and in addition to the judicial review mentioned in ORS 432.140 and ORS 432.142(2)(e). The texts of the statutes and the legislative history show that ORS 432.142 describes a judicial review proceeding, not a separate statutory proceeding.

A person who wishes to obtain a delayed certificate of birth must first present information to the state registrar, pursuant to ORS 432.140(1). If the state registrar rejects the application, ORS 432.140(4)(a) requires the state registrar to "advise the applicant of the right to appeal under ORS 183.480 to 183.484." ORS 432.142 then describes an appeal process and expressly requires that the petition include allegations "as may be required under ORS 183.480 and ORS 183.484." ORS 432.142(2)(e). There could be no clearer textual indication that the process described in ORS 432.142 is Administrative Procedures Act (APA) review as specified in ORS 432.140—that is, other-than-contested-case review.

The history of ORS 432.142 also supports my conclusion that what is currently in place is intended to be a judicial review of the state registrar's determination and not a separate statutory proceeding in addition to any judicial review. The complete history is set out in the Appendix to this opinion. Suffice it to say that, as the majority's tortured analysis demonstrates, the statute has undergone many modifications over the years. The current version appears to describe somewhat of a hybrid other-than-contested-case review in which the trial court reviews the documentation provided at the agency level, takes new evidence, and makes findings *de novo*. However, whatever the nature of the review process, it is clear that it is a *review* and not a separate process in addition to the judicial review of which the registrar is

required to give notice under ORS 432.140. Neither the legislative history nor the text of the statute bears out the majority's conclusion that the statute provides an alternative to judicial review.

The state registrar shares my understanding about the operation of the relevant statutes. ORS 432.142(2) directs the state registrar to prescribe and to furnish or approve the form of the petition that is to be filed under ORS 432.142(1). The form that the state registrar has prepared for that purpose identifies the form as a petition for judicial review. The parties in this case shared that understanding, too. They filed a stipulated motion to transfer the case from the Washington County Circuit Court to the Marion County Circuit Court on the basis of ORS 183.484(1), which confers "[j]urisdiction for judicial review for orders other than contested cases" on the Marion County Circuit Court and "the circuit court for the county in which the petitioner resides or has a principal business office." Because petitioner in this case resides in the State of Washington, the parties understood that the "court of competent jurisdiction" in which petitioner could file her petition under ORS 432.142(1) was the Marion County Circuit Court, based on the jurisdiction conferred on it by ORS 183.484(1).

In summary, the majority errs in concluding that there are two routes for review of the state registrar's order to deny the issuance of a delayed birth certificate: a judicial review proceeding under the Oregon APA and a separate circuit court proceeding under ORS 432.142.

The second way in which the majority errs is in concluding that our review of the circuit court's decision is *de novo*, based on the reasoning that the relief provided by the statute—the issuance of a delayed certificate of birth—is equitable. Although it is possible that that would have been a correct conclusion in 1981, when the circuit court was the initiating forum for the issuance of a delayed birth certificate,[1] under the current procedure described in ORS 432.142, it is

---

[1] I note that, since it was enacted in 1967, ORS 3.260 has listed "issuance of delayed birth certificate" (along with adoption, change of name, filiation, commitment, and custody) as a proceeding in which "the circuit court shall exercise exclusive and original jurisdiction[.]"

unlikely that the legislature would have contemplated that this court would review *de novo* the circuit court's findings. Rather, our review of a circuit court's judgment in other than a contested case is for legal error. *See, e.g., Norden v. Water Resources Dept.*, 329 Or 641, 645-49, 996 P2d 958 (2000).

I note, further, that the parties have assumed that review in this case is for any evidence, that is, for legal error. They did not request *de novo* review of the trial court's findings. Thus, even assuming that the opinion is correct that, as a general matter, we would review these types of decisions *de novo*, it is highly unusual for us to engage in *de novo* review *sua sponte. See Harnisch v. College of Legal Arts, Inc.*, 243 Or App 16, 25, 259 P3d 67 (2011) ("Because we do not make or develop a party's argument when that party has not endeavored to do so itself * * * we constrain our review in this case to the arguments that defendant actually made.").

The only assignment of error raised by petitioner is that the trial court committed *legal* error in requiring petitioner to submit "documentary evidence" of the birth of the child in Oregon. It is clear from the record, however, that the trial court correctly understood that it could decide the case based solely on testimonial evidence and that the court did not require petitioner to submit documentary evidence in order to establish the child's birth. What the court said was that it was not persuaded because the record lacked evidence to *corroborate* petitioner's testimony—an implicit determination that the court did not find petitioner's and her cousin's testimony credible. Whether or not our review of this type of case is *de novo*, it is clear that the court did not err as asserted in the assignment of error. We should limit our review to the asserted error and not take on a *de novo* review of the record when it is not requested.

Ultimately, however, even if the majority were correct that review is *de novo*, we are not permitted to disregard the implicit credibility determinations of the trial court, which had the opportunity to view the witnesses' demeanor. *See, e.g., Pinkham v. Brubaker*, 178 Or App 360, 362, 37 P3d 186 (2001). In its *de novo* review of the circuit court's findings, the majority disregards what must necessarily have been a credibility-based determination by the trial court that the

petitioner simply had not put on persuasive evidence that the child was born in Oregon. The record is clear that the trial court understood that it was not bound by agency rules regarding the documentation required to determine birth. At the hearing, the court asked counsel:

> "I've only had one other case like this * * *. Does the law allow me, if I find that the testimony is determinative of that fact, to grant what's being requested?"

The state's lawyer replied:

> "Yes, it does, Your Honor. We believe it's a totality of the evidence standard. And I can point you to a statute talking about that. I don't think it's completely—you're not going by the agency rules, regulations now. It's your judgment."

Thus, the trial court was well aware that it could make a determination based on the record before it and that it was not bound by the agency's rules regarding proof of birth. The court heard the testimony of petitioner and her cousin, both of whom were involved with the birth of the child and stated that it took place in Oregon. The child was born in January 2005, and the mother testified that she had moved to Washington in February 2005. She had no documentation of her presence in Oregon. The court explained that it was troubled by the lack of documentation corroborating the presence of petitioner or the child in Oregon. The trial court said:

> "This is an unfortunate case where there is simply no evidence in the record to corroborate the testimony of Mother who has not lived in Oregon for more than 3 years. * * * [A]bsent corroborating evidence, *I do not find* that Petitioner has met [her] burden of proof. * * * If there is additional evidence that can be presented, I would be pleased to review that."

(Emphasis added.) The court found that petitioner had not met her burden of proof. Assuming, as we must, that the trial court correctly understood that it was required to make its determination based on the record before it, the trial court's statement that petitioner had not met her burden of proof can represent only a determination that, in the absence of corroborating evidence and in light of mother's absence from

the state for three years since the child's birth, petitioner's and her cousin's testimony simply was not persuasive, that is, it was not credible. That is a determination to which we must defer, even on *de novo* review.[2]

The majority rejects the need to do that, concluding that the trial court more likely than not denied the petition on the basis of a misunderstanding of petitioner's burden of proof, rather than on the basis of a credibility determination. Tellingly, the majority does not identify the legal source for the trial court's ostensible misunderstanding, and I cannot identify one. Where, as here, the state confirmed at the hearing the trial court's assumption that the testimony of petitioner's witnesses alone would be legally sufficient to satisfy petitioner's burden, the majority's conclusion that the court acted contrary to that understanding is remarkable.

Furthermore, because we lack the ability to make demeanor-based credibility determinations, *de novo* review on this record is a hollow exercise. With no evidence in the record other than evidence submitted by petitioner, including her testimony and that of her cousin, we would have no alternative but to find in favor of petitioner. There are aspects of petitioner's and her cousin's testimony that could—and, presumably for the trial court, did—raise doubts about the veracity of their testimony, but those doubts are not of the type that could be resolved without having seen the witnesses testify.

For all of the above reasons, I would affirm the judgment, and I therefore dissent.

---

[2] If there were any doubt about whether the trial court correctly apprehended its task, the legally appropriate thing for us to do would be to remand the case to the trial court for it to reconsider its decision under the proper standard. That disposition would be consistent with petitioner's assignment of error, which asks us to correct the trial court's alleged error in applying an incorrect legal standard to its decision.

In that regard, the trial court emphasized in its letter opinion its willingness to consider additional evidence. In a footnote in petitioner's brief, she indicates that she did not respond to that invitation because she understood the court to be willing to consider only documentary evidence and not to conduct a further hearing to receive additional testimony. Petitioner appears to have misapprehended the import of the trial court's invitation to submit evidence. If it were appropriate to remand the case to the trial court, the court and the parties would be free to consider whether an additional evidentiary hearing would be appropriate.

## APPENDIX

Before 1983, a person seeking a delayed birth certificate had to file a petition in circuit court. *Former* ORS 432.255 (1981), *repealed by* Or Laws 1983, ch 709, § 45. The petition was to be on a form prepared by the state registrar, *former* ORS 432.260 (1981), *repealed by* Or Laws 1983, ch 709, § 45, and was to be served on the district attorney, *former* ORS 432.265 (1981), *repealed by* Or Laws 1983, ch 709, § 45. The petitioner was entitled to appear at a hearing and "present to the court such evidence as is available in support of the statements of the petition." *Former* ORS 432.270 (1981), *repealed by* Or Laws 1983, ch 709, § 45. The court, "if satisfied that the facts therein stated are supported by substantial evidence, shall make findings with respect to the time and place of the birth of the petitioner and his parents and shall order that such birth be registered * * *[.]" *Former* ORS 432.275 (1981), *repealed by* Or Laws 1983, ch 709, § 45.

In 1983, the legislature adopted what is, essentially, the current process. A review of the history of the bill that the legislature adopted to create the current process, Senate Bill (SB) 30 (1983), provides insight into its intended operation.

SB 30 originated as an effort by the Health Division of the Oregon Department of Human Resources to modernize Oregon's vital records system by making it roughly congruent with the 1977 Model State Vital Statistics Act (Model Act). *See* Testimony, Senate Committee on Judiciary, SB 30, Feb 22, 1983, Ex B (statement of Kristine Gebbie); *compare* SB 30 §§ 8, 9 (1983), *with* Model State Vital Statistics Act §§ 9, 10 (1977). As initially proposed, the relevant provisions of SB 30 provided:

"**SECTION 8.** (1) When a certificate of birth of a person born in this state has not been filed within the time period provided in [*former* ORS 432.205 (1983), *repealed by* Or Laws 1997, ch 783, § 22], a certificate of birth may be filed in accordance with rules of the division. The certificate shall be registered subject to evidentiary requirements as the division shall by rule prescribe to substantiate the alleged facts of birth.

"(2)   A certificate of birth registered one year or more after the date of birth shall be made on forms prescribed and furnished by the State Registrar, marked 'Delayed,' and shall show on its face the date of the delayed registration.

"(3)   A summary statement of the evidence submitted in support of the delayed registration shall be indorsed on the certificate.

"(4)(a)   When an applicant does not submit the minimum documentation required by rule of the division for delayed registration or when the State Registrar has reasonable cause to question the validity or adequacy of the applicant's sworn statement or the documentary evidence, and if the deficiencies are not corrected, the State Registrar shall not register the delayed certificate of birth and shall advise the applicant of the reasons for this action and *of the right of the applicant to appeal to a court of competent jurisdiction.*

"(b)   The division by rule may provide for the dismissal of an application which is not actively prosecuted.

"**SECTION 9**.   (1)   *If a delayed certificate of birth is rejected under section 8 of this 1983 Act, a petition signed and sworn to by the petitioner may be filed with a court of competent jurisdiction for an order establishing a record of the date and place of the birth and the parentage of the person whose birth is to be registered.*

"(2)   The petition shall be made on a form prescribed and furnished by the State Registrar and shall allege:

"(a)   That the person for whom a delayed certificate of birth is sought was born in this state;

"(b)   That no certificate of birth of the person can be found in the Vital Statistics Unit or the office of any local custodian of birth certificates;

"(c)   That diligent efforts by the petitioner have failed to obtain the evidence required in accordance with section 8 of this 1983 Act and rules adopted pursuant thereto;

"(d)   That the State Registrar has refused to register a delayed certificate of birth; and

"(e)   Such other allegations as may be required.

"(3)   The petition shall be accompanied by a statement of the State Registrar made in accordance with section 8 of this 1983 Act and all documentary evidence which was submitted to the State Registrar in support of the registration.

"(4)   The court shall fix a time and place for hearing the petition and shall give the State Registrar 30 days' notice of the hearing. The State Registrar or an authorized representative * * * may appear and testify in the proceeding.

"(5)   If the court finds, from the evidence presented, that the person for whom a delayed certificate of birth is sought was born in this state, it shall make findings as to the place and date of birth, parentage and such other findings as may be required and shall issue an order, on a form prescribed and furnished by the State Registrar, to establish a certificate of birth. This order shall include the birth data to be registered, a description of the evidence presented and the date of the court's action.

"(6)   The clerk of the court shall forward each order to the State Registrar not later than the 10th day of the calendar month following the month in which it was entered. The order shall be registered by the State Registrar and shall constitute the certificate of birth."

SB 30 §§ 8, 9 (1983) (boldface and uppercase in original; emphasis added).

The Senate Judiciary Committee staff had a number of problems with the original draft of SB 30, including the provisions on the registration of delayed birth certificates. One of the committee's counsel, Kathi Bogan, described the problems in a memorandum to the committee chair, Senator Jan Wyers:

"This is a Health Division bill based on the Model State Vital Statistics Act pu[b]lished by the U.S. Department of Health, Education and Welfare in 1977. The bill is designed to conform Oregon's vital statistics law to a nationwide system so that 'each event is recorded once.' The bill was drafted by the state registrar of vital statistics, Joe Carney, reviewed by Len Perlman of the AG's office, and handled in Legislative Counsel by Kathleen Beaufait. It has an impact on paternity, adoption, abortion and marriage laws as well as ORS ch. 432, the existing vital statistics provisions. *There are numerous problems in drafting language: the*

*model act language has not been adapted to fit in with existing Oregon law.* In addition, the bill is opposed by many county health officials because of its central reporting concept. Following is a brief outline of problems:

"* * * * *

"Section 8

"* * * *The review provision, at subsection (4) is not defined, but includes the 'court of competent jurisdiction' language. I am not clear if this will be a writ of review or mandamus proceeding or if it is an agency review to the Court of Appeals.*

"Section 9

"This section covers the review procedure, replacing ORS 432.255 and the original $1 circuit court procedure now at ORS 432.260-280. It doesn't require a hearing within any definite timeframe."

Hearing, Senate Committee on Judiciary, SB 30, Feb 22, 1983, Ex A (underlining in original; emphasis added).

As the discussion indicates, the staff was uncertain what to make of the judicial review provisions in the Model Act because it was unclear which court was the intended "court of competent jurisdiction" and the procedure by which that court would conduct its review. Those questions led the committee to amend SB 30 to bring the judicial review provisions into line with Oregon's framework for judicial review of state agency actions, where, in circumstances in which an agency such as the state registrar makes a decision of the type at issue here, review is in the circuit court of an order in other than a contested case. As amended, the changes that were made to the bill to establish APA review of the state registrar's decisions were ultimately codified at ORS 432.140(4)(a) and ORS 432.142 and are italicized below:

"(4)(a)   When an applicant does not submit the minimum documentation required by rule of the state registrar for delayed registration or when the state registrar has reasonable cause to question the validity or adequacy of the applicant's sworn statement or the documentary evidence, and if the deficiencies are not corrected, the state registrar shall not register the delayed certificate of birth and *shall enter an order to that effect stating the reasons for the action.*

*The state registrar shall advise the applicant of the right to appeal under ORS 183.480 and 183.484."*

ORS 432.140(4)(a) (1983), *amended by* Or Laws 1997, ch 783, § 19. The changes to ORS 432.142 were, in turn:

"(1)   *If application for a delayed certificate of birth is ordered rejected under ORS 432.140, the applicant may appeal the order under ORS 183.480 and 183.484.*

"(2)   *On appeal, the applicant shall allege*:

"(a)   That the person for whom a delayed certificate of birth is sought was born in this state:

"(b)   That no certificate of birth of the person can be found in the Vital Statistics Unit or the office of any local custodian of birth certificates;

"(c)   That diligent efforts by the petitioner have failed to obtain the evidence required in accordance with ORS 432.140 and rules adopted pursuant thereto;

"(d)   That the state registrar has refused to register a delayed birth certificate; and

"(e)   Such other allegations as may be required *under ORS 183.480 and 183.484.*

"(3)   The petition shall be accompanied by a statement of the state registrar accompanying the order made in accordance with ORS 432.140 and all documentary evidence which was submitted to the state registrar in support of the registration.

"[*Deletion of paragraph requiring court to fix a time for hearing the petition.*]

"(4)   If the court finds, from the evidence presented, that the person for whom a delayed certificate of birth is sought was born in this state, it shall make findings as to the place and date of birth, parentage and such other findings as may be required and shall issue an order, on a form prescribed and furnished by the state registrar, to establish a certificate of birth. This order shall include the birth data to be registered, a description of the evidence presented and the date of the court's action.

"(5)   The clerk of the court shall forward each such order to the state registrar not later than the 10th day of the calendar month following the month in which it was

entered. The order shall be registered by the state registrar and shall constitute the certificate of birth."

ORS 432.142 (1983), *amended by* Or Laws 1997, ch 783, § 20 (emphasis added).

As the emphasized changes indicate, the modifications that the legislature made to the Model Act made review of the registrar's decision to deny the registration of a delayed birth certificate judicial review under the Oregon APA of an order in other than a contested case, but the legislature retained the Model Act language that specified that the court should order the entry of a delayed birth certificate "[i]f the court finds, from the evidence presented, that the person for whom a delayed certificate is sought was born in this state[.]" ORS 432.142(4) (1983). That combination of features leads me to conclude that the legislature intended the reviewing court to follow the procedures for APA review in other than a contested case, including conducting a hearing to make a record for that review, *see, e.g., Norden v. Water Resources Dept.*, 329 Or 641, 645-49, 996 P2d 958 (2000), but intended the court to make its own decision about whether the child was born in Oregon rather than to determine whether the state registrar had erred in making that decision. It takes some effort to discern that intention, but I believe that it is implicit in the decision to retain the language from the Model Act directing the circuit court to make its own finding on whether the child was born in Oregon, rather than to review the finding of the state registrar on that issue for legal error, which is the review that a court would conduct in other than a contested case. *See* ORS 183.484(5), (6). In particular, the direction to the court in ORS 432.142(4) (1983), to "issue an order * * * to establish a certificate of birth" that "shall include the birth data to be registered, a description of the evidence presented and the date of the court's action" is an action by the reviewing circuit court that is different from any action that a reviewing court can take under the APA on review of an order in other than a contested case. *See* ORS 183.484(5), (6).

That conclusion is bolstered by the fact that normal APA review of the state registrar's decision in other than a contested case would rarely, if ever, provide a basis to reverse the state registrar's decision. That is because, given the

expected record that would be created in such a case, it is difficult to imagine how the state registrar's decision *to deny* registration could ever be said to lack substantial evidence to support it.

The manner in which the legislature modified the Model Act to combine APA review with the Model Act's independent determination by the reviewing court on whether a child for whom a birth certificate is sought was born in Oregon was less than elegant, but I am convinced that it was intended to work in the manner that I have described. I also believe, however, that the less than elegant solution had the potential to create problems, particularly because of the provision in ORS 432.142(1) (1983) that states that "the applicant may appeal the order *under ORS 183.480 and 183.484.*" (Emphasis added.) I can well imagine that parties and courts could be confused by the juxtaposition of the direction that the appeal is under ORS 183.484, which specifies in subsections (5) and (6) that the review is for legal error, with the direction in ORS 432.142(4) (1983) that the circuit court is to make its own finding, "from the evidence presented," on whether the person for whom the certificate is sought was born in Oregon and to enter its own order to that effect.

The legislature took the opportunity in 1997 to attempt to improve the less than elegant adaptation of the Model Act to APA review when it undertook to make housekeeping changes and to delete obsolete provisions in the course of bringing Oregon law into line with the latest Model Act and with federal law. In doing that, it managed to achieve an even less elegant solution to the problem. It made no substantive change to ORS 432.140(4), which continues to require the state registrar to advise unsuccessful applicants that they have "the right to appeal under ORS 183.480 to 183.484," that is, under the APA. It made changes to ORS 432.142 to add more language from the Model Act to it, but it retained the provision in ORS 432.142(2)(e) that the petition that a person files to seek a judicial determination that a child was born in Oregon shall contain "[s]uch other allegations as may be required under ORS 183.480 and 183.484."

The three changes that it did make were to replace subsection (1) of ORS 432.142 with the original language

from the Model Act on the initiation of the appeal of the state registrar's decision:

"(1)    If the State Registrar of the Center for Health Statistics refuses to file a delayed certificate of birth under the provisions of ORS 432.140, the applicant may file a signed and sworn petition with a court of competent jurisdiction seeking an order establishing a record of the date and place of birth and the parentage of the person whose birth is to be registered."

Or Laws 1997, ch 783, § 20; *compare id. with* Model State Vital Statistics Act § 10 (1992). It made an equivalent change to ORS 432.142(2) by replacing language that refers to the allegations that must be made on appeal with the language from the Model Act that specifies that the "petition shall be made on a form prescribed and furnished or approved by the state registrar * * *[.]" Or Laws 1997, ch 783, § 20. The facts that must be alleged in the petition are the same facts that had to be alleged on appeal. Finally, the legislature put back language from the Model Act that the legislature had removed in its 1983 adaptation that refers to the hearing that the court must conduct:

"(4)    The court shall fix a time and place for hearing the petition and shall give the state registrar notice of the hearing. The state registrar or an authorized representative may appear and testify in the proceeding."

Or Laws 1997, ch 783, § 20. The legislature made no other substantive changes to ORS 432.142.

I understand those "housekeeping" changes to reflect an effort by the legislature to clear up the conflict that the reference in ORS 432.142(1) (1983) to conducting an appeal "under ORS 183.480 and 183.484" created as a result of its juxtaposition with the direction in ORS 432.142(4) (1983) for the court to make an independent factual determination on whether the child was born in Oregon. Its deletion in 1997 of the reference in subsection (1) to appealing under the APA and replacement of it with language from the Model Act directing an applicant to file a petition in "a court of competent jurisdiction" ameliorated the conflict, but it did so in an awkward and confusing way. As noted, the changes left

intact the direction in ORS 432.140(4)(a) that the state registrar is to advise unsuccessful applicants of their "right to appeal under ORS 183.480 to 183.484" and the direction in ORS 432.142(2)(e) that the petition that applicants must file to appeal the state registrar's decision shall contain "[s]uch other allegations as may be required under ORS 183.480 and 183.484." The sense that I make of all of that is that the legislature intended the form of the appeal that applicants take to challenge an adverse decision by the state registrar to follow that of an APA review proceeding of an order in other than a contested case, but the decision that the court makes on appeal is a decision that is not tied to the APA review standards in such a proceeding. What is certain to me is that the legislature did not intend to create two avenues by which an unsuccessful applicant can seek to overturn an adverse decision by the state registrar on the registration of a delayed birth certificate: one under the APA and one through an independent court proceeding. That conclusion is bolstered by the fact that, as discussed earlier, *see* 243 Or App at 125 (Armstrong, J., dissenting), traditional APA review will almost certainly be unavailing, yet that is the appellate avenue about which ORS 432.140(4)(a) directs the state registrar to advise unsuccessful applicants. No statute directs the registrar to advise applicants of review under ORS 432.142, the procedure that the majority believes is the independent procedure that the 1997 legislature created and that, as noted above, is the only efficacious appeal procedure available to an applicant.